[Civil No. 1930. Filed January 25, 1922.]

[203 Pac. 569.]

ALEXINA GRISTY, Appellant, v. EULA HUD-GENS, Guardian of the Person and Estate of JESSIE MAY HUDGENS, a Minor, Appellee; PHELPS DODGE CORPORATION, Interpleader.

1. MASTER AND SERVANT—RIGHT OF MEMBER OF EMPLOYEES' BENEFIT ASSOCIATION TO NAME BENEFICIARY DEFINED.—A member of an employees' benefit association that is a private concern, and is not included in any legal or statutory classification of insurance companies of any character provided by the laws of Arizona, has the right to name any person as his beneficiary provided there is no restriction by statute or constitution or by-law of the association, except where the insurance is taken out under such circumstances that it comes within the rule requiring the beneficiary to have an insurable interest in the life of the member.

2. INSURANCE—ASSOCIATION ONLY CAN QUESTION ELIGIBILITY OF BENEFICIARY DESIGNATED IN CERTIFICATE.—The general rule is that, even where the insured is limited by statute, by the common law, or by the charter or laws of the society in his right to designate a beneficiary, no one but the association or insurer can question the eligibility of the person named.

___

1. Who is a dependent within statute or rules defining beneficiaries of mutual benefit societies, notes, 7 Ann. Cas. 358; 17 Ann. Cas. 867; 2 L. R. A. (N. S.) 653; 36 L. R. A. (N. S.) 208.

3. MASTER AND SERVANT—DESIGNATION OF BENEFICIARY BY MEMBER OF
   EMPLOYEES' BENEFIT ASSOCIATION HELD VALID.—In a certificate in
   an employees' benefit association the insured had a right to desig-
   nate a beneficiary other than his wife, he having taken out the
   insurance voluntarily and paid the premiums himself, the insurable
   interest rule not being applicable.

4. INSURANCE—CONTRACTS ASCERTAINED FROM LAWS OF ASSOCIATION,
   SUBJECT TO LAW OF STATE CREATING, AND, IF NOT RESTRICTED, IN-
   SURED MAY NAME ANY BENEFICIARY.—A contract entered into by
   a mutual benefit society with a member is executory, and its terms
   will be ascertained from the certificate in connection with the so-
   ciety's rules, subject to the laws of the state creating, and, if
   nothing exists to limit the appointment of a beneficiary, the mem-
   ber may name any person.

5. HUSBAND AND WIFE — HUSBAND MAY DISPOSE OF PERSONALTY OF
   COMMUNITY IF NOT IN FRAUD OF WIFE.—In view of Civil Code of
   1913, section 3850, the husband has a right to dispose of the per-
   sonalty belonging to the community as he sees fit, provided he does
   not, by his disposal of same, thereby defraud the wife.

APPEAL from a judgment of the Superior Court
of the County of Cochise.  Albert M. Sames, Judge.
Affirmed.

Mr. O. Gibson, for Appellant.

Mr. Alexander Murry, for Appellee.

BOLLINGER, Superior Judge.—William W. Gristy,
for some time prior to his death, was an employee of
the Phelps Dodge Corporation, a corporation, plain-
tiff herein, and was also a member of the Employees'
Benefit Association of the Phelps Dodge Corporation.
By virtue of his membership in said association, there
was issued to him a certificate or policy of insurance
in said association, which certificate or policy of in-
surance, upon his death, entitled the beneficiary named

---

4.  Right to designate as beneficiary in insurance policy or benefit
certificate one without insurable interest as affected by considerations
of public policy, notes, 15 Ann. Cas. 236; Ann. Cas. 1916C, 587; 25
L. R. A. 627; 16 L. R. A. (N. S.) 555.

therein to the proceeds of said certificate or policy of insurance.

William W. Gristy was a married man, his wife being Alexina Gristy, appellant herein, they having been legally married on August 22, 1909, which marriage existed as a valid one until the death of said William W. Gristy, which occurred on the twenty-third day of March, 1920. Deceased first applied for membership in said association on the twentieth day of December, 1909. His application was approved by the superintendent of said association, and a certificate of membership was duly issued on the first day of January, 1910, his wife being the first beneficiary, and the insurance amounting to $1,500. This contract was changed on or about the first day of January, 1914, when deceased discontinued his services and employment with the Phelps Dodge Corporation, plaintiff herein, but made application for a continuation of his membership in said association, which was permitted, but at this time the amount of his certificate or policy was reduced from $1,500 to $1,000. His contract was changed again on the third day of March, 1919, when he designated a beneficiary other than his wife. The real parties and only parties to this contract were the deceased, William W. Gristy, and the Phelps Dodge Corporation, plaintiff herein. At the time of the death of the said William W. Gristy there was due under his certificate or policy $1,000, which amount, after his funeral expenses were paid, was reduced to $769.10, which sum is involved in this suit.

Counsel for respective parties hereto have filed in this court, under date of June 9, 1921, an agreed case on appeal, under and in accordance with paragraph 1257, Revised Statutes of Arizona of 1913. In addition to their stipulation as to the material facts in this case, they set forth the provisions of the constitution and by-laws of the Employees' Benefit Associa-

tion of the Phelps Dodge Corporation which are pertinent to this case, and are as follows:

"Object 1. The object of the benefit association is to provide its members with a certain income when sick, or when killed or disabled by accident off duty, or when disabled for less than two weeks by accident suffered on duty, and to pay to their families certain definite sums in case of an actual death; to create and maintain a fund which shall belong to the employees to be used in payment of benefits to them, and to cost them the least possible considering the benefits received."

Rule 17, paragraph 3, of the rules of the Benefit Association provides as follows:

"Unless I shall hereafter otherwise designate, in writing, with the approval of the superintendent of the Benefit Association, death benefits shall be payable to ——, my ——, residing at ——, if living, and, if not living, to ——, my ——, residing at ——, if living, and, if not living, to my legal representative; or, if proper claim is not made to the superintendent within one year of the date of my death, the death benefit shall lapse and the amount thereof shall become and remain a part of the benefit fund."

On March 3, 1919, the said William W. Gristy changed the beneficiary in the said certificate or policy of insurance "to Jessie May Hudgens, my friend." Jessie May Hudgens was a minor child about twelve years of age. She was not related to said William W. Gristy in any way, and was not a member of his family. Eula Hudgens, appellee herein, is the mother of said Jessie May Hudgens and is her duly appointed guardian. The Phelps Dodge Corporation, a corporation, plaintiff herein, filed a bill in interpleader in the superior court of Cochise county, Arizona, by which Alexina Gristy, appellant herein and widow of William W. Gristy, was made one of the parties, and Eula Hudgens, as guardian, and appellee herein, was

made the other party, and the proceeds of the certificate or policy of insurance, amounting to $769.10, was paid into court subject to the disposition of the court by its final judgment. Said fund was claimed by both the appellant and the appellee, and proper pleadings were filed by each of them setting forth their claims to said fund. After a trial of the cause in the superior court of Cochise county, Arizona, judgment was rendered in favor of Eula Hudgens, appellee, as guardian, directing that the said fund which constituted the proceeds of the certificate or policy of insurance on the life of William W. Gristy be paid over to her. The Employees' Benefit Association of the Phelps Dodge Corporation, plaintiff, is a private concern, and is not included in any legal or statutory classification of the insurance companies of any kind or character as provided by the laws of Arizona.

This case has been appealed by counsel for Alexina Gristy, and counsel for said appellant has based his argument upon three assignments of error which, in substance, are as follows:

First, because the constitution and by-laws of the Employees' Benefit Association of the Phelps Dodge Corporation, as mentioned in the agreed statement, limit the right to take under policies of insurance issued to its members to members of the insured's family.

Second, because Jessie May Hudgens, named as beneficiary in the policy to William W. Gristy, had no insurable interest in the life of the said William W. Gristy.

Third, because William W. Gristy and Alexina Gristy, appellant herein, were husband and wife up until the time of the death of the said William W. Gristy, and under the community property system in vogue in Arizona the said William W. Gristy had no

right to take out insurance in favor of any person who had not an insurable interest in the life of the insured.

By the first assignment of error which counsel for appellant attempts to sustain in his brief by argument and citation of numerous authorities objection is made to the judgment of the lower court because it is claimed that William W. Gristy, as a member of the Employees' Benefit Association of the Phelps Dodge Corporation, was limited in his right to name a beneficiary. It is contended that he had no right or authority to name any one except some member of his own family. He named Jessie May Hudgens, a twelve-year old girl, whom he designated as "my friend"; she not being either a member of his family or related to him in any way. The court is of the opinion that William W. Gristy was not restricted by any statute of the state of Arizona or by any rules or regulations of the Employees' Benefit Association of the Phelps Dodge Corporation from naming Jessie May Hudgens as his beneficiary. Object 1 of the Employees' Benefit Association, as above set forth, merely declares the general purpose of the association. It does not limit or restrict the beneficiary in any certificate of insurance that may be issued, when read in connection with rule 17, paragraph 3, which provides that "unless I shall hereafter otherwise designate in writing." This language makes it plain that a member reserves the right to designate his own beneficiary. A member of an association such as this has the absolute right to name any person he pleases as his beneficiary, provided there is no restriction by statute or by the constitution and by-laws of the association, except where the insurance is taken out under such circumstances that it comes within the rule requiring the beneficiary to have an insurable interest in the life of the member. This view of the law is sus-

tained by the following cases and authorities: 29 Cyc. 105; 1 Cooley's Brief on Insurance, p. 797; *Filley* v. *Illinois Life Ins. Co.,* 93 Kan. 193, L. R. A. 1915D, 134, 144 Pac. 259; *Sheehan* v. *Journeymen B. P. & P. Assn.,* 142 Cal. 489, 76 Pac. 238; *Mitchell* v. *Grand Lodge,* 70 Iowa, 360, 30 N. W. 867; *Berkeley* v. *Harper,* 3 App. D. C. 308; *Sabin* v. *Phinney,* 134 N. Y. 423, 30 Am. St. Rep. 681, 31 N. E. 1087.

Counsel for appellant cited a number of authorities to sustain his contention that William W. Gristy was limited in his selection of a beneficiary to a member of his own family, but these authorities do not govern in this case, because they arose under statutory or charter provisions by which the insured was positively limited or restricted in his selection of a beneficiary. Furthermore, as the real parties to this contract were the deceased, William W. Gristy, and the Phelps Dodge Corporation, plaintiff herein, the court fails to see any reason why either their original contract of January 1, 1910, or their later contracts, which changed and amended the original one under the dates of January 1, 1914, and March 3, 1919, should be held invalid. There is no law in the state of Arizona which precludes them from making such a contract as the original one, or prohibits them from changing it as the record shows they did change it. Among the authorities cited by counsel for appellant and which the court finds do not control in this case are the following: *Modern Woodmen of America* v. *Comeaux,* 79 Kan. 493, 17 Ann. Cas. 865, 25 L. R. A. (N. S.) 814, 101 Pac. 1; *Supreme Lodge, N. E. Order of Protection* v. *Sylvester,* 116 Me. 1, L. R. A. 1917C, 925, 99 Atl. 655; *Royal League* v. *Shield,* 251 Ill. 250, 36 L. R. A. (N. S.) 208, 96 N. E. 45; *Bush* v. *Modern Woodmen of America,* 182 Iowa, 515, 152 N. W. 31, 162 N. W. 59.

But, even if counsel for appellant were correct in his position, and this were a case where a member of the Employees' Benefit Association was positively limited or restricted in his selection of a beneficiary to a member of his own family, appellant could not profit by the situation. The general rule of law is that, even where the insured is limited by statute, by the common law, or by the charter or laws of the society in his right to designate a beneficiary, no one but the association or insurer can question the eligibility of the person named. In this case the insurer has not questioned the right of William W. Gristy to name Jessie May Hudgens as his beneficiary, but has paid the proceeds of the certificate, amounting to $769.10, into court, and expressed its willingness to abide by the final judgment of the court. This rule of law is sustained by the following authorities: *Johnson* v. *Supreme Lodge, K. H.*, 53 Ark. 255, 8 L. R. A. 732, 13 S. W. 794; *Johnson* v. *Van Epps,* 110 Ill. 551; *Peek* v. *Peek,* 101 Ky. 423, 41 S. W. 434; *Finch* v. *Grand Grove, U. A. O. D.,* 60 Minn. 308, 62 N. W. 384; *Coulson* v. *Flynn,* 181 N. Y. 62, 73 N. E. 507; *Starr* v. *Knights of Maccabees,* 27 Ohio C. C. 475; *Schoales* v. *Order of Sparta,* 206 Pa. 11, 55 Atl. 766; *Taylor* v. *Hair* (C. C.), 112 Fed. 913.

Counsel for appellant under his second assignment of error raises the objection to this judgment that Jessie May Hudgens, named as beneficiary in the certificate to William W. Gristy, had no insurable interest in the life of the said William W. Gristy, but the court is of the opinion that the facts of this case do not bring it within the insurable interest rule. In this case William W. Gristy took out the insurance voluntarily and paid the premiums or assessments himself. Every person has an insurable interest in his own life, and has an absolute right to insure his own life for

the benefit of any other person whom he may designate as beneficiary. While it is true that a valid contract of insurance cannot legally be taken on the life of another by one who has no insurable interest in said life, because such a contract contravenes public policy, yet each person has an insurable interest in his own life, and therefore he has a right to procure insurance upon his own life for the benefit of another regardless of an insurable interest which the beneficiary may or may not have in his life. Such a contract cannot be declared void because of the want of insurable interest in the beneficiary when it appears that the person whose life is insured was acting for himself and in good faith paid the premiums for the purpose of promoting the interest and welfare of the beneficiary in taking out the certificate or policy of insurance. A contract under such conditions is in no sense a wagering or speculative contract. A contract entered into by a mutual benefit society or association with a member is executory, and its terms will be ascertained from the certificate issued to the member in connection with the charter and by-laws of the association, subject to the law of the state under which said association was created, and, if nothing exists either in law or in the rules and regulations of the association to restrict or limit the appointment of a beneficiary, the member may legally name any person he pleases as beneficiary, and his right to do so cannot be questioned. 14 R. C. L. 920, par. 97; *Connecticut L. Ins. Co.* v. *Schaefer,* 94 U. S. 457, 24 L. Ed. 251 (see, also, Rose's U. S. Notes); *Aetna L. Ins. Co.* v. *France,* 94 U. S. 561, 24 L. Ed. 287; *Bloomington Mut. Ben. Assn.* v. *Blue,* 120 Ill. 121, 60 Am. Rep. 558, 11 N. E. 331; *Union Frat. League* v. *Walton,* 109 Ga. 1, 47 Am. St. Rep. 350, 46 L. R. A. 424, 34 S. E. 317; *Fidelity Mut. L. Assn.* v. *Jeffords,* 107 Fed.

402, 53 L. R. A. 193, 46 C. C. A. 377; 29 Cyc. 105; *Walter* v. *Hansel,* 42 Minn. 204, 44 N. W. 57; *Heinlein* v. *Mutual L. Ins. Co.,* 101 Mich. 250, 45 Am. St. Rep. 409, 25 L. R. A. 627, 59 N. W. 615; *Dolan* v. *Supreme Council, C. M. C. Assn.,* 152 Mich. 266, 15 Ann. Cas. 232, 16 L. R. A. (N. S.) 555, 116 N. W. 383; *Sabin* v. *Phinney,* 134 N. Y. 423, 30 Am. St. Rep. 681, 31 N. E. 1087; 19 R. C. L. 1279.

The third assignment of error does not challenge serious consideration, because the agreed statement of facts does not show that the premiums on this certificate of insurance, were paid out of community funds or the wages of the insured after January 1, 1914. This court has no right to assume that such was the case. Even if this court should assume that to be true, there is no showing or statement that such funds were paid in fraud of the wife's rights, and no showing that the wife had not received even more than her share of the community property. Furthermore, it is elementary that the husband has a right to dispose of the personalty belonging to the community as he sees fit, provided that he does not, by his disposal of the same, thereby defraud his wife. There are also authorities to sustain the contention of counsel for the appellee even if it were shown that these premiums or assessments were paid from community funds. Some of these authorities also make the distinction between policies of old line insurance companies and mutual benefit societies. Section 3850, Rev. Stats. C. C. 1913; 21 Cyc. 1659, 1666; *Clark* v. *Herschl,* 81 Iowa, 200, 9 L. R. A. 841, 47 N. W. 78; *Luhrs* v. *Luhrs,* 123 N. Y. 367, 20 Am. St. Rep. 754, 9 L. R. A. 534, 25 N. E. 388; *Mitchell* v. *Grand Lodge, Iowa K. H.,* 70 Iowa, 360, 30 N. W. 865; *Sabin* v. *Phinney,* 134 N. Y. 423, 30 Am. St. Rep. 687, 31 N. E. 1087.

The judgment appealed from is hereby affirmed.

FLANIGAN, J., being disqualified, Honorable E. ELMO BOLLINGER, Superior Judge of Mohave county, was called in to act in his place.

ROSS, C. J.—I concur most cordially in the well-written opinion of Judge BOLLINGER, and insert this word of mine only for the purpose of emphasizing one feature of the case. "The Employees' Benefit Association" mentioned in the statement of case, is in fact nothing more than a "voluntary relief department" of the Phelps Dodge Corporation, operating the Copper Queen mines in Cochise county. It is only a descriptive phrase of one of the activities of that company in connection with its employees. It is not a legal entity. It does not appear in this case as a party. It is therefore obvious that the contract of insurance involved was made and entered into by and between the Phelps Dodge Corporation, as one party, and William Gristy, as the other party; that Gristy, the insured, first named appellant, his wife, as the beneficiary, in case of his death, and later, with the approval of the Phelps Dodge Corporation, the only other party to the contract, he changed the beneficiary from his wife to his friend, Jessie May Hudgens. It is stipulated by the parties to this suit, and we know it to be a fact, "that the said Employees' Benefit Association (Phelps Dodge Corporation) is a private concern and it is a fact that it is not included in any legal statutory classification of insurance companies of any kind or character as provided by the laws of Arizona." It necessarily follows, then, that whatever contracts of insurance the Phelps Dodge Corporation should make are unaffected by any statutory law regulating insurance. Its power to make such contracts and to change and modify them is limited only by the general law of contracts; if they are not violative of any statutory law or

against morals or public policy or *ultra vires,* they are valid and may be enforced as originally made or in accordance with their terms as modified.

The beneficiary in a contract of insurance has no tangible interest in the policy until the happening of the event insured against; her right is only inchoate until then. It is, in fact, contingent upon the will of the parties to the contract in a case like this one; for here there was no law to prevent William Gristy and the Phelps Dodge Corporation from abrogating the contract entirely or changing it as they saw fit, or making a contract in entire disregard of "object 1" of the Benefit Association of the Phelps Dodge Corporation. I see no reason why Gristy, with the consent of the Phelps Dodge Corporation, could not have named the Hudgens child originally as the beneficiary. But aside from that it seems to me that rule 17 of the by-laws clearly contemplates that the insured may designate any one as the beneficiary with the approval of the Phelps Dodge Corporation.

The arrangement of relief departments along similar lines is a common thing throughout the country, especially among railroad companies. *Pittsburgh C., C. & St. L. Ry. Co.* v. *Carmody,* 188 Ky. 588, 12 A. L. R. 469, 222 S. W. 1070. The courts have had occasion frequently to construe contracts of this nature, and they have invariably discussed them as contracts between the corporations and the employee, and, of course, subject to change or modification and performance by the parties thereto. I find no case involving the rights of the beneficiary under such contract, but, of course, her rights would be subject to the will of the contracting parties. The contract in this case, in its general features, is well described by the language employed in describing the contract in *P., C., C. & St. L. Ry. Co.* v. *Cox,* 55 Ohio St. 497, 35 L. R. A. 507, 45 N. E. 641, as follows:

"Moved thereto by the stipulations of the employee members, the company assumes the obligation to take charge, in part, of the administration of the association, to pay all its operating expenses, to take care of its funds, pay interest thereon, and be responsible for their safekeeping, and to make appropriations to supply any deficiencies. The promises are concurrent and obligatory upon both. Both promise and both pay in consideration of promises and payment by the other, and the fact that third persons are interested does not impair the force of the obligation. If these stipulations do not supply consideration, it would be difficult to frame such as would; and, there being express assent to the terms of the contract by both parties, the element of mutuality is not wanting."

The "obligation" thus described is that of the parties thereto, and there is no reason in law why they may not change or modify the contract in any manner that they may choose so long as they violate no law.

McALISTER, J. (Dissenting).—I am unable to concur in the well-stated opinion of Judge BOLLINGER, speaking for himself and the Chief Justice, because in my judgment it nullifies and defeats one of the only two purposes for which the Employees' Benefit Association of the Phelps Dodge Corporation, a voluntary association, was organized, namely, to pay to the families of its members certain definite sums in case of death, the other one being to provide sick and accident benefits for the members themselves.

This is shown very clearly from "object 1" of the "benefit plan," which is the association's constitution or fundamental law, setting forth the purpose of the organization—the reason for its existence—and appearing *verbatim* in the majority opinion, along with rule 17 of the association, which gives members the right, with the approval of its superintendent, to designate a person other than the one originally

named as the recipient of the death benefits under its certificates or policies of insurance. The holder of such a certificate is not prohibited from changing his beneficiary, but in so doing is, in my opinion, restricted to a choice of some other member of his family, for this right can be exercised only within the limitation expressed in "object 1," since "a person not of the class for whose benefit a mutual benefit association is organized cannot be a beneficiary." *Warner* v. *Modern Woodmen of America,* 67 Neb. 233, 108 Am. St. Rep. 634, 2 Ann. Cas. 660, 61 L. R. A. 603, 93 N. W. 397; *Fisher* v. *Donovan,* 57 Neb. 361, 44 L. R. A. 383, 77 N. W. 778; *Wolf* v. *District Grand Lodge,* 102 Mich. 23, 60 N. W. 445; *Britton* v. *Supreme Council,* 46 N. J. Eq. 102, 19 Am. St. Rep. 376, 18 Atl. 675; *National Mutual Aid Assn.* v. *Gonser,* 43 Ohio St. 1, 19 L. R. A. 187, 1 N. E. 11; *Alexander* v. *Parker,* 144 Ill. 355, 19 L. R. A. 187, 33 N. E. 183; *Norwegian Old People's Home Society* v. *Wilson,* 176 Ill. 94, 52 N. E. 41; *Supreme Lodge, N. E. O. of P.,* v. *Sylvester,* 116 Me. 1, L. R. A. 1917C, 925, 99 Atl. 655; *American Legion of Honor* v. *Perry,* 140 Mass. 580, 5 N. E. 634; *Caudell* v. *Woodward,* 96 Ky. 646, 29 S. W. 614.

The opinion of the majority seems to be based upon the theory that a certificate of insurance issued by the Employees' Benefit Association of the Phelps Dodge Corporation is a contract between the holding member and the association in which no one else has any interest, and that consequently it, like any other contract, may be changed by the parties at will. This may be true, but it must be remembered that one of the parties to the contract is an association composed of a large number of individuals which can act only in the manner prescribed by its constitution and by-laws (here benefit plan), and that when it is sought to change the terms of one of its contracts it must be

done in conformity therewith or it is ineffective. The superintendent of the association can act for it only as he is authorized to do so by its constitution and by-laws, and when he performs an act which clearly amounts to a change in its constitution such act is void because unauthorized, for the fundamental law of the organization is the chart by which he is guided, and its provisions are as binding upon him and the association as though they were prescribed by statute. Neither he nor the association can ignore them any more than they could a requirement of the statute or a regulation of an incorporated association. If they stand in the way of something the association wants to do, they must be changed in the proper way by the association, either before action or perhaps afterwards by way of ratification, or the doing of that thing will not be legal. It follows, then, that those decisions dealing with the requirements of statutes or the constitution and by-laws of incorporated benevolent associations on the question of the eligibility of beneficiaries in the policies issued to their members are entitled to great weight. Hence the authority conferred on the superintendent of this association by its constitution and by-laws to approve the designation of a beneficiary does not carry with it the authority to approve the designation of one not coming within the only class which such fundamental law permits to be a beneficiary, to wit, the family of the deceased member, for surely the power to amend its constitution and by-laws without some action by the board of trustees upon whom this duty devolves was not thus given to a single individual, though to hold valid the act of the superintendent in this instance would in effect say that it was. It being immaterial whether the enumeration of those who may take death benefits be by statute or by the organization itself, in order to be binding, it is clear that only those named

by the latter, the statute being silent on the question, can be beneficiaries, and consequently the approval by the superintendent of the designation by William W. Gristy of Jessie May Hudgens, his friend, as his beneficiary, was void and left in force the designation of Alexina Gristy, his wife, as originally made. *Di Messiah* v. *Gern,* 10 Misc. Rep. 30, 30 N. Y. Supp. 824; *Union Mutual Assn.* v. *Montgomery,* 70 Mich. 587, 14 Am. St. Rep. 519, 38 N. W. 588.

The rule which permits a member to designate anyone he desires as his beneficiary has been changed in many states by statute and by the constitution and by-laws of most of the benevolent associations in such a way as to limit the right to certain classes, generally the wife and children, relatives and dependents, and—

"where the classes of persons to whom benefits may be paid are prescribed by statute, or by the society's charter of incorporation, neither the society, nor a member, nor the two combined, can divert the fund from the classes prescribed; the society has no power to issue a certificate payable to a person not belonging to one of those classes; and the designation of a person thus ineligible as beneficiary is nugatory. . . . Ordinarily the society has power to prescribe what classes or persons shall be eligible as beneficiaries, and in case it exercises that power the designation of a person not belonging to one of those classes is ordinarily ineffectual." 29 Cyc. 108.

The Supreme Court of New Jersey, in *Britton* v. *Supreme Council, supra,* used this language:

"Where a corporation is organized under a statute authorizing the formation of corporations to accumulate a fund to be paid to the widows and children of deceased members, the corporation can only pay the fund to the widows and children of deceased members, and, if it should make a promise to pay any part of it to any other person, its promise would be void."

The Policemen's Benevolent Association of Chicago is an association organized and incorporated under the laws of Illinois "to create a fund and provide means for the relief of the distressed, injured, sick, or disabled members of the association and their immediate families." Elef Danielson, a member of the association, named his daughter as beneficiary, but later canceled and annulled that policy and procured another in which he designated the Norwegian Old People's Home Society as beneficiary. In disposing of the claim of the latter to the proceeds of the policy, the Supreme Court of Illinois, in *Norwegian Old People's Home Society* v. *Wilson, supra,* used this language:

"There can be no question that the Norwegian Old People's Home Society was incompetent to take under the terms of the certificate of incorporation of the association. It could not in any way be held to be a member of the deceased's immediate family, and only such persons were competent to take. It is no answer to say that the statute of the state under which the association was organized was broad enough to permit such society to take. The incorporators of the association chose to restrict the objects of its benevolence to the immediate family of the member, and the courts must construe the contract as they find it."

In discussing the requirement of a benevolent organization known as the Order of the Golden Cross that only the families or dependents of members could be beneficiaries, the Supreme Court of Kentucky in *Coudell* v. *Woodward, supra,* used the following language:

"In this respect the objects of the order are in accord with those of the numerous benevolent associations in our country, and which have the support and hearty countenance of the law. Any other construction would open the floodgates of speculative insur-

ance, and at once frustrate the humane and generous purposes of the order. The member may direct, but he must do so within the restrictions evidently contemplated by the organic law of the society, and confine his choice to some member or members of his family, or to some one or more of those dependent on him. We construe the organic law of the order, therefore, as limiting the choice or direction of the applicant as provided in the Constitution, and which requires him to name the member of his family, or some one dependent on him, as the beneficiary of the certificate. Moreover, if the law of the order is to be so construed as to allow the member to name a stranger, the certificate would be void as to the stranger, and, under the policy of our law, the appellant, the mere friend of Mrs. Woodward, could not take; for nothing is better settled in this state than that one obtaining a policy of insurance on the life of another must have an insurable interest in the life of that other. It is said, however, that the appellant did not, in fact, obtain the insurance; that the insured voluntarily did so for the other's benefit. It may be that in this case all the dangerous features are, as a matter of fact, wanting; nevertheless, the dangerous principle remains. If the law denouncing speculative insurance may be avoided by simply having the insured voluntarily take out on his life a policy of insurance, payable to his friend, we may soon witness a similar state of case in our criminal courts as is now being heralded by the daily press in states where the courts have been more liberal in construing the law of insurable interest. As has been well said, such a system of insurance 'is an incitement to murder that is irresistible by persons of large greed and small conscientiousness.' ''

The designation of Alexina Gristy as the beneficiary having never been lawfully superseded, her interest in the policy of her husband vested immediately upon his death. It was as though no one else had ever been named or an attempt of that kind made, and the rule of law announced in the majority opinion that no one but the association or the insurer can

question the eligibility of the person designated has
no application, the policy standing as originally
issued. No act or omission of the association after
the death of the insured can affect in the slightest de-
gree the interest of a beneficiary which has vested, and
certainly the fact that the association deposited the
amount of the policy in court to be paid to the one
to whom the court might say it rightfully belonged,
thereby signifying its willingness to pay it to Mrs.
Gristy, if hers, cannot prevent her from showing that
the policy as originally issued was never canceled, but
remained in full force and effect up to the time of her
husband's death, since nothing other than an ineffec-
tive and void attempt to change the beneficiary was
ever done, either by the insured or the insurer, which
could prevent her expectancy from ripening into a
certainty upon the former's death. *Elsey* v. *Odd
Fellows' Mutual Relief Assn. et al.*, 142 Mass. 224, 7
N. E. 844; *Di Messiah* v. *Gern, supra.*

Rule 17, upon which the opinion of Judge BOL-
LINGER and the concurring opinion of Judge ROSS
are based, does not say in specific terms who may be
designated beneficiaries, and its wording is such that
it conveys the impression that only members of the
family may be so named, for it will be observed that
immediately preceding the blank space left for insert-
ing the name of the person to be designated appears
the personal pronoun "my," which, as there used,
conveys the idea that someone to whom the insured
bears a close relationship, as wife, husband, son,
daughter, father, mother, brother or sister, etc., would
be supplied. And, if it be suggested that the word
"friend" may be just as appropriately inserted, the
thought immediately occurs: If it were not intended
to restrict the designation of beneficiaries to those
closely related to the insured, would not the word
"my" have been omitted, and the designating clause,

reading "death benefits shall be payable to ——, my ——, residing at ——, if living," have read "death benefits shall be payable to ——, residing at ——, if living," in which case the impression would have been conveyed that anyone, without restriction, might be the beneficiary? It would hardly seem, then, that it was intended that rule 17 should be so broadly construed as to permit the naming of one's friend as his beneficiary, especially when it is realized that to do so destroys both the literal meaning and the possibility of effecting the evident purpose of "object 1" of the "benefit plan," which is the very cornerstone of the whole structure; while to interpret it as requiring an exercise of the right it confers in the light and within the limits of the expressed purpose of the organization accomplishes the aim of the latter by compelling the payment of its funds to those to whom it was intended by the members who furnished them they should go. The seeming conflict in the two provisions is in the letter, not the spirit, and in construing them it should be remembered that "the letter killeth, but the spirit giveth life."

In becoming a member of this organization an employee of the plaintiff company could have no purpose other than to gain for himself and family the benefits to be derived from such membership as these are disclosed by an examination of its "benefit plan," and, when a contract between the association and a person joining it is entered into in accordance therewith, the courts should construe both in such a way as to effectuate completely the beneficent purpose of the organization. *Journeymen B. P. & B. Assn.* v. *Bristol,* 17 Cal. App. 576, 120 Pac. 787; 3 Am. & Eng. Ency. of Law, 1067. Such a result does not follow, however, if one who is merely a friend and without any insurable interest whatever in the life of the insured is permitted to supplant those for whose benefit

the very organization itself was brought into being, and who both legally and morally have every reason to be the recipient of the insured's bounty. With such a construction of its rules and regulations the Employees' Benefit Association of the Phelps Dodge Corporation has no excuse for existence other than to furnish sick and accident benefits to its members; the part the family is supposed to play in the scheme being thereby excluded.

This should not be, for clearly what the concurring opinion designates as nothing more than a ''voluntary relief department'' of the Phelps Dodge Corporation was not organized for the relief of its members' friends, but for the benefit of those whom natural justice itself, to say nothing of the law, makes it their duty to support. And even though it be true that the certificate of insurance issued to William W. Gristy is a contract between him and the Phelps Dodge Corporation, yet it cannot be changed at the will of these two parties, except as the ''benefit plan'' of the association, in accordance with whose requirements it was entered into, confers this right; but, as I see it, construing rule 17 so as to permit friends to be beneficiaries, either when the policy is first issued or afterwards, has the effect of changing this plan in a most vital particular, when there has been no amendment of its constitution allowing it. The members of the Employees' Benefit Association, in addition to the amount given by the Phelps Dodge Corporation, contribute two per cent of their wages—$24 a year for one drawing $100 per month—to procure its sick and accident benefits and to help their families in case of death, and surely this fund should be disbursed in such a way as to accomplish this purpose, and no member of the organization permitted to direct the payment of any portion of it to another cause.

Hence the appellant, Alexina Gristy, the wife of the insured, is in my opinion entitled to the proceeds of the policy, and the judgment should be in her favor.