SUPREME COURT OF ARIZONA
En Banc

| | |
|---|---|
| In re the<br>ESTATE OF FRED N. KIRKES | ) Arizona Supreme Court<br>) No. CV-12-0120-PR<br>)<br>) Court of Appeals<br>) Division Two<br>) No. 2 CA-CV 11-0072<br>)<br>) Pima County<br>) Superior Court<br>) No. PB20100346<br>)<br>) **O P I N I O N**<br>) |

Appeal from the Superior Court in Pima County
The Honorable Charles V. Harrington, Judge

**REVERSED**

───────────────────────────────────────────────

Opinion of the Court of Appeals, Division Two
229 Ariz. 212, 273 P.3d 664 (2012)

**AFFIRMED**

───────────────────────────────────────────────

LAW OFFICE OF ETHAN STEELE, P.C.                          Tucson
     By   Ethan Steele

And

TIMOTHY A. OLCOTT, P.C.                              Green Valley
     By   Timothy A. Olcott
Attorneys for Gail J. Kirkes

WATERFALL, ECONOMIDIS, CALDWELL, HANSHAW,
& VILLAMANA, P.C.                                         Tucson
     By   Jill D. Wiley
Attorneys for Joshua C. Kirkes

───────────────────────────────────────────────

**B E R C H**, Chief Justice

¶1      This case addresses whether a spouse, at death, can leave more than one-half of a community-owned retirement account to a non-spouse beneficiary.  We conclude that, absent unusual circumstances, the deceased spouse may, as long as the surviving spouse receives at least one-half of the community's value.

## I.  FACTS AND PROCEDURAL HISTORY

¶2      Fred Kirkes designated Joshua Kirkes, his son from a prior marriage, as the beneficiary of 83 percent of a community-owned individual retirement account ("IRA").  Gail Kirkes, Fred's wife at the time of his death, had previously been the sole beneficiary on the account, which was held in Fred's name.  She challenged the beneficiary designation, asking the superior court to award her the entire account or, alternatively, to increase her share based on her community interest.

¶3      Gail and Joshua filed cross-motions for summary judgment.  The superior court granted Gail's motion, awarding her 50 percent of the IRA.  The court of appeals reversed.  Analogizing the account to life insurance proceeds, which this Court has permitted the holder to leave to a third party, the court remanded the case to the superior court to ensure an equitable division of the community.  *In re Estate of Kirkes*, 229 Ariz. 212, 215-16 ¶¶ 14, 18, 273 P.3d 664, 667-68 (App. 2012).

2

**¶4**       We granted Gail's petition for review to address a recurring issue of statewide importance.  We have jurisdiction under Article 6, Section 5(3) of the Arizona Constitution and A.R.S. § 12-120.24.

## II.  DISCUSSION

**¶5**       During marriage, each spouse has an undivided half interest in community property.  *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Greene*, 195 Ariz. 105, 110 ¶ 20, 985 P.2d 590, 595 (App. 1999).  Generally, either spouse has the power to dispose of community property, *see* A.R.S. § 25-214(C), and each spouse owes the other certain fiduciary duties, *Gerow v. Covill*, 192 Ariz. 9, 18 ¶ 40, 960 P.2d 55, 64 (App. 1998).

**¶6**       Community property jurisdictions are split on whether the disposition of non-probate community property at death should be viewed as a whole, or whether the community interest should be divided based on the value of each major asset. *Compare Estate of Wilson v. Bowens*, 227 Cal. Rptr. 794, 798 (Cal. Ct. App. 1986) (payable on death designation on community bank account effective only as to a one-half interest), *with Byrd v. Lanahan*, 783 P.2d 426, 429 (Nev. 1989) (designation effective to the extent the surviving spouse receives half of the overall community).  Upon the death of one spouse, the community dissolves, with half of the value of community assets going to the surviving spouse and the other half passing subject

3

to disposition by the deceased spouse. *Gaethje v. Gaethje*, 7 Ariz. App. 544, 549, 441 P.2d 579, 584 (1968). States restricting transfers of community property to a one-half interest in individual assets are referred to as following an "item theory," while those applying the more flexible approach follow an "aggregate theory." *See* William A. Reppy, Jr., *Application of the "Item Theory" to Fungible Community Property Upon Death of Spouse Exercising Testamentary Power*, 14 Com. Prop. J. 1 (1987); *see also* Charles E. Zalesky, Comment, *The Modified Item Theory: An Alternative Method of Dividing Community Property Upon the Death of a Spouse*, 28 Idaho L. Rev. 1047 (1992).

¶7    The Arizona Legislature has adopted the aggregate theory in allocating community property upon dissolution of marriage. *See* A.R.S. § 25-318. And this Court has affirmed a policy-owner's right to designate a non-spouse beneficiary of a life insurance policy, and, in doing so, implicitly approved of the aggregate theory in the context of community-owned life insurance. *See Gristy v. Hudgens*, 23 Ariz. 339, 347-48, 203 P. 569, 572 (1922), *disapproved of on other grounds by Day v. Clark*, 36 Ariz. 353, 285 P. 682 (1930). But no Arizona statute specifically addresses the issue here. *Cf.* A.R.S. § 14-3101(A) ("Upon the death of a person, his separate property and *his share of community property* devolves to the persons to whom the

4

property is devised by his last will, . . . or to those indicated as substitutes for them in cases involving renunciation or other circumstances affecting the devolution of intestate estates." (Emphasis added.)).

¶8 In *Gristy*, we considered the effect of designating a third party beneficiary on a life insurance policy for which the premiums may have been paid with community funds. 23 Ariz. at 348, 203 P. at 572. Upholding the designation, we noted there had been "no showing or statement that such funds were paid in fraud of the wife's rights, and no showing that the wife had not received even more than her share of the community property." *Id.*

¶9 Gail counters that we have applied an item theory in two other cases, *La Tourette v. La Tourette*, 15 Ariz. 200, 137 P. 426 (1914), *disapproved of by Mortensen v. Knight*, 81 Ariz. 325, 331, 305 P.2d 463, 467 (1956), and *In re Monaghan's Estate*, 65 Ariz. 9, 173 P.2d 107 (1946). We find these cases inapposite. *La Tourette* merely noted that one spouse has an interest in the community property before the other spouse's death and that, at death, a spouse may dispose only of his or her interest in the community, 15 Ariz. at 207-09, 137 P. at 428-29, propositions with which we agree, but which do not resolve the question here. *In re Monaghan's Estate* held that a surviving wife's share of the community could not be sold to

5

satisfy probate expenses. 65 Ariz. at 22–23, 173 P.2d at 115. Neither case adopts the item theory.

¶10 In contrast, on facts similar to those here, our court of appeals has approved a father's designation of his son from a previous marriage as the beneficiary of a term life insurance policy purchased with community assets. *Gaethje*, 7 Ariz. App. at 549, 441 P.2d at 584. In *Gaethje*, the court relied on *Gristy* to uphold the life insurance beneficiary designation because the surviving wife received "at least as much in value as one[-]half of all of the community and other jointly acquired property (including therein the proceeds of the life insurance policy here in question)." *Id.* That is, rather than looking at each item of property, the court looked at the aggregate value of the community property. *Id.; see also In re Estate of Alarcon*, 149 Ariz. 336, 339, 718 P.2d 989, 992 (1986) (describing *Gaethje*'s consideration of value of all community property including insurance proceeds as "[o]ne approach approved in Arizona").

¶11 Because of the "unique nature" of retirement accounts, Gail urges us to distinguish them from life insurance proceeds. She argues primarily that retirement accounts are distinctive financial planning devices that receive special creditor protections and tax benefits, and therefore require special protections for the surviving spouse.

6

**¶12** We decline to apply a different rule to retirement accounts. Although such accounts are useful devices for retirement planning, life insurance may serve similar purposes. We likewise find Gail's tax-related arguments unconvincing because life insurance proceeds also enjoy preferential tax treatment. *See, e.g.*, I.R.C. § 101(a)(1) (excluding certain life insurance benefits from gross income); A.R.S. § 43-1001(2), (11) (basing state-taxed income on federal adjusted gross income). Much like retirement accounts, insurance proceeds are generally protected from estate creditors, *see* A.R.S. § 20-1131, and may receive ongoing creditor protections through estate planning. *Compare id.* § 14-10502 (spendthrift trusts), *with id.* § 33-1126(B) (IRA creditor protections). Moreover, both are fungible assets. For these reasons, any distinctions do not warrant different treatment.

**¶13** Joshua asserts that A.R.S. § 14-3916, which authorizes the personal representative to "consider community property held outside the estate so that the division of community property held in the estate and outside the estate is based on equal value but is not necessarily proportionate," answers the question here. But that section does not control for two reasons. First, the disposition of the IRA does not involve the personal representative. Second, Gail seeks only one-half of the IRA account. She did not claim that she would receive less

than one-half of the community estate's value if 83 percent of the IRA went to Joshua. We do agree, though, that § 14-3916 supports the result we reach today by authorizing consideration of the value of the entire estate, including both probate and non-probate assets. *See also* A.R.S. § 14-1102(B)(2) (noting underlying purpose of probate code to effectuate decedent's intent).

¶14 Although equitable considerations may occasionally warrant a different outcome, Gail does not allege any unique circumstances making Fred's disposition of the IRA unjust. She has not asserted fraud or claimed that she will receive less than her full community share if the decedent's beneficiary designation is honored. We therefore hold that one spouse may designate a non-spouse beneficiary of more than 50 percent of a community property retirement account, as long as the other spouse receives half of the community overall, and other circumstances do not make the distribution fraudulent or unjust. *See, e.g.*, *Finck v. Finck*, 9 Ariz. App. 382, 388, 452 P.2d 709, 715 (1969) ("peculiar circumstances" warranted ensuring husband maintained a one-half interest in community-owned stock after divorce). The beneficiary designation here is effective.

### III. CONCLUSION

¶15 For the foregoing reasons, we affirm the court of appeals' opinion and reverse the superior court's order. The

8

IRA shall be distributed in accordance with the beneficiary designation.

_____
Rebecca White Berch, Chief Justice

CONCURRING:

_____
Scott Bales, Vice Chief Justice

_____
A. John Pelander, Justice

_____
Robert M. Brutinel, Justice

_____
Michael J. Brown, Judge*

* Pursuant to Article 6, Section 3 of the Arizona Constitution, the Honorable Michael J. Brown, Judge of the Court of Appeals, Division One, was designated to sit in this matter.