IN THE

# SUPREME COURT OF THE STATE OF ARIZONA

COLUMBUS LIFE INSURANCE COMPANY,
*Plaintiff,*

*v.*

WILMINGTON TRUST, N.A.,
*Defendant.*

No. CV-22-0202-CQ
Filed July 27, 2023

Certified Question from the United States District Court of Arizona
The Honorable Diane J. Humetewa, Judge
No. CV-21-00734-PHX-DJH
**QUESTION ANSWERED**

COUNSEL:

Nancy R. Giles, Laura C. Martinez, Giles Law, PLLC, Phoenix; Brian D. Burack (argued), Michael J. Miller, Ilya Schwartzburg, Cozen O'Connor, Philadelphia, PA, Attorneys for Columbus Life Insurance Company

J. Steven Sparks, Vincent R. Miner, Sanders & Parks, P.C., Phoenix; Julius A. Rousseau, III (argued), Arentfox Schiff LLP, New York, NY, Attorneys for Wilmington Trust, N.A.

Jimmie W. Pursell, Alexander J. Egbert, Jennings, Strouss & Salmon, P.L.C., Phoenix; Andrew C. Smith, Adam Marcu, Pillsbury Winthrop Shaw Pittman LLP, New York, NY, Attorneys for Amicus Curiae Institutional Longevity Markets Association

Taylor Young, Taylor Young Appeals PLLC, Phoenix; Stephen C. Baker, John B. Dempsey, Brian J. Levy, Myers, Brier & Kelly, LLP, Scranton, PA, Attorneys for Amicus Curiae American Council of Life Insurers

_____

JUSTICE BOLICK authored the Opinion of the Court, in which CHIEF JUSTICE BRUTINEL, VICE CHIEF JUSTICE TIMMER, and JUSTICES LOPEZ, BEENE, MONTGOMERY, and KING joined.

_____

JUSTICE BOLICK, Opinion of the Court:

¶1         Before us is the following certified question: "Does Arizona law permit an insurer to challenge the validity of a life insurance policy based on a lack of insurable interest after the expiration of the two-year contestability period required by A.R.S. § 20-1204?" For the reasons explained below, we answer the question no.

## BACKGROUND

¶2         In late 2003, Columbus Life Insurance Company ("Columbus") received an application for a "second to die" life insurance policy on the lives of Howard and Eunice Peterson. Shortly thereafter, Columbus issued the $2.5 million dollar policy (the "Policy"), listing the H & E Peterson Family Partnership LLLP as the beneficiary and owner. The Policy contained a provision stating that the Insurer would "not contest this policy to the extent of the Specified Amount [of $2.5 million] after it has been in effect during both Insureds' lifetimes for two years from the Policy Date." The LLLP paid the premiums consistently while it owned the Policy. Soon after the two-year incontestability period had run, the Policy was sold and the beneficiary designations were changed. Through a series of subsequent assignments, Wilmington Trust N.A. was designated as the

2

owner of the Policy and has acted as Securities Intermediary for a third-party investor since 2013.

**¶3**         Howard Peterson died in January 2018. Eunice Peterson died in May 2020. After both insureds passed away, Wilmington submitted a claim for the death benefits under the Policy, which Columbus refused to pay. In April 2021, Columbus filed a lawsuit in the United States District Court for the District of Arizona seeking a declaratory judgment that the Policy is unenforceable and seeking to retain the premiums.

**¶4**         In its complaint, Columbus argued that the Policy was acquired as part of a Stranger Originated Life Insurance ("STOLI") scheme. STOLI schemes typically involve inducing senior citizens to procure life insurance policies on their own lives with the intent to assign those policies to third parties in exchange for a payment in advance. Columbus argued that "STOLI policies violate insurable interest and anti-wagering laws, take advantage of senior citizens, and operate to convert legitimate life insurance products—which are designed to provide actual protection to families and others with an interest in the continued life of the insureds— into cash machines whereby strangers to the insureds are more interested in seeing the insureds dead than alive." Columbus claimed that the lack of an insurable interest and violation of anti-wagering laws made the Policy void ab initio, and thus the contract and its contestability period never existed.

**¶5**         Wilmington responded to Columbus's Complaint and filed a Motion for Judgment on the Pleadings. Wilmington argued that the Policy and Arizona law preclude challenges to a policy's validity once the incontestability period has run out. The Policy's incontestability provision was required by § 20-1204, which directs that a life insurance policy must contain a provision stating that the policy "shall be incontestable, except for nonpayment of premiums, after it has been in force during the lifetime of the insured for a period of two years from its date of issue." Wilmington contended that "the Policy's incontestability clause and the straightforward application of A.R.S. §§ 20-1217 and 20-1204 preclude Plaintiff's challenge to the Policy's validity."

**¶6** The district court certified to this Court the question of whether Columbus could challenge the validity of the Policy in light of the incontestability provision in the Policy and § 20-1204. Because no Arizona precedent exists determining whether a lack of insurable interest can be challenged after the contestability period, we agreed to resolve the certified question pursuant to article 6, section 5(6) of the Arizona Constitution and A.R.S. § 12-1861.

## DISCUSSION

**¶7** Columbus asserts two propositions that are well-established as a matter of Arizona law. First, under both common law and statute, insurance policies taken on the lives of others by third parties who lack an insurable interest are contrary to public policy, as such contracts are considered wagers on the lives of others. *See, e.g.*, *Gristy v. Hudgens*, 23 Ariz. 339, 347 (1922). Thus, A.R.S. § 20-1104(A) makes it unlawful to "procure" such policies.

**¶8** Second, contracts that contravene public policy are generally void ab initio. *See, e.g.*, *Clark v. Tinnin*, 81 Ariz. 259, 263 (1956); *Red Rover Copper v. Indus. Comm'n*, 58 Ariz. 203, 214 (1941). "A void contract is one which never had any legal existence or effect, and it cannot in any manner have life breathed into it." *Nat'l Union Indemn. Co. v. Bruce Bros., Inc.*, 44 Ariz. 454, 464 (1934). Columbus argues that because this is allegedly a STOLI contract, it was void ab initio, so that the Policy and its incontestability clause can have no legal effect. That would be true even though Columbus collected premiums on the Policy for sixteen years and did not challenge it until after the proceeds were due, because no waiver, ratification, or consent can revive a void contract. *See id.* at 466–67; *accord United Bank & Trust Co. v. Joyner*, 40 Ariz. 229, 238 (1932).

**¶9** Were the common law in Arizona unchanged, Columbus would be correct. But so long as it acts within its constitutional boundaries, the legislature may modify or abrogate court-made common law. *See, e.g.*, *Young v. Beck*, 227 Ariz. 1, 7–8 ¶ 26 (2011); *see also* A.R.S. § 1-201 (adopting common law unless "inconsistent with . . . the laws of this state"). This Court has established that "if the common law is to be changed,

4

supplemented, or abrogated by statute, it must be done expressly or by necessary implication." *Wyatt v. Wehmueller*, 167 Ariz. 281, 284 (1991).

¶10 The legislature has not abrogated the common law principles stated above. However, Wilmington argues that the legislature has adopted a comprehensive regulatory scheme that modifies those principles and establishes exclusive remedies in the context of insurance contracts purchased by third parties who lack an insurable interest. Columbus counters that the statutes do not alter the common law rule.

¶11 Our statutory interpretation jurisprudence requires us to determine the plain meaning of the words the legislature chose to use, viewed in their broader statutory context. *S. Ariz. Home Builders Ass'n v. Town of Marana,* 522 P.3d 671, 676–77 ¶ 31 (Ariz. 2023). We seek "to harmonize statutory provisions and avoid interpretations that result in contradictory provisions." *Lagerman v. Ariz. State Retirement Sys.*, 248 Ariz. 504, 511 ¶ 35 (2020) (quoting *Premier Physicians Grp., PLLC v. Navarro*, 240 Ariz. 193, 195 ¶ 9 (2016)). Thus, we view "the statute as a whole" to "give meaningful operation to all of its provisions." *Wyatt*, 167 Ariz. at 284.

¶12 We begin with § 20-1104(A), which provides that:

> [N]o person shall procure or cause to be procured any insurance contract on the life or body of another individual unless the benefits under such contract are payable to the individual insured or his personal representatives, or to a person having, at the time when the contract was made, an insurable interest in the individual insured.

This statute encompasses the public policy against insurance contracts lacking an insurable interest and prohibits procuring them. Relatedly, A.R.S. § 13-3304(C) makes it a class 1 misdemeanor to knowingly benefit from gambling. *See* § 13-3304(C) ("Benefiting from gambling is a class 1 misdemeanor.").

¶13        Section 20-1104(B) states, in relevant part, that:

> If the beneficiary, assignee or other payee under any contract
> made in violation of this section receives from the insurer any
> benefits thereunder accruing on the death . . . of the
> individual insured, the individual insured or his executor or
> administrator . . . may maintain an action to recover such
> benefits from the person so receiving them.

This subsection creates a civil remedy for the insured after benefits are paid
to a third party who lacks an insurable interest. *McKee v. Penick (In re Al
Zuni Trading, Inc.)*, 947 F.2d 1403, 1404 (9th Cir. 1991).

¶14        As noted above, § 20-1204 requires a provision in all life
insurance contracts stating that the policy "shall be incontestable, except for
nonpayment of premiums, after it has been in force during the lifetime of
the insured for a period of two years from its date of issue." Section 20-1217
further instructs that "[a] clause in any policy of life insurance providing
that the policy shall be incontestable after a specified period shall preclude
only a contest of the validity of the policy," and not defenses based on
specific policy provisions. This case involves a contest of the validity of the
Policy.

¶15        Reading these statutes in concert indicates a comprehensive
statutory scheme governing the types of policies at issue here and
establishing exclusive remedies. First, it is unlawful for someone lacking
an insurable interest to procure such a contract. Second, doing so exposes
the purchaser to a misdemeanor penalty. Third, life insurance policies must
contain an incontestability provision limiting challenges to the policy's
validity to two years. Fourth, the only exception to the two-year limitation
is nonpayment of premiums. Fifth, the civil remedy for an impermissible
third-party insurance contract is recovery of proceeds from the beneficiary
by the insured's estate.

¶16        This reading gives effect to every statutory provision. By
contrast, Columbus's interpretation would drain the incontestability of a
contract's validity of its sole exception: nonpayment of premiums. The
principle of expressio unius applies here. *See City of Surprise v. Ariz. Corp.*

*Comm'n*, 246 Ariz. 206, 211 ¶ 13 (2019) ("[T]he expression of one item implies the exclusion of others.").

**¶17**    Even more fatal to Columbus's assertion that the contract is void ab initio is that it would largely eviscerate the insured's remedy provided by § 20-1104(B). *See Nicaise v. Sundaram*, 245 Ariz. 566, 568 ¶ 11 (2019) ("A cardinal principle of statutory interpretation is to give meaning, if possible, to every word and provision so that no word or provision is rendered superfluous."). By the statute's own terms, its remedy applies only after benefits are paid, which would never occur if the contract was void ab initio. Columbus's reading would allow an insurance company to collect premiums for an extended period of time−here for approximately sixteen years−challenge the policy's validity long after the incontestability period, and decline to pay the proceeds, leaving the insured's estate without so much as a refund of premiums. The statutes' obvious dual purpose is both to deter procurement of policies that violate public policy and still furnish a remedy to the insured's estate. Columbus's interpretation accomplishes the first but defeats the second.

**¶18**    Two legal terms of art are especially pertinent here—one is present in the statutory scheme while the other is meaningfully absent. The first is "contract," which appears throughout the statutes, including in § 20-1104(B). Its presence, particularly in the context of what happens after the benefit is paid out, suggests that the statute contemplates that the contract is in effect. The second, which is missing from the statutory scheme, is "void." The legislature has, in other contexts, deemed that certain contracts are void. *See, e.g.*, A.R.S. § 20-1123; A.R.S. § 34-226(C). The use of "void" in these provisions demonstrates that the legislature knows how to deem a contract void when it so wishes and did not do so here. These terms underscore that § 20-1104 does not render the policy void ab initio but provides an after-the-fact remedy to the insured.

**¶19**    Both parties cite cases from Arizona and other jurisdictions to bolster their positions. Columbus relies heavily on *Gristy*, which set forth the general common law rule that life insurance policies may not be taken on the lives of others without an insurable interest because they violate public policy. 23 Ariz. at 347. But the Court did not opine on whether such contracts are void ab initio, because it did not have to: the contract before

it did not implicate the insurable interest rule. *Id.* at 346. Moreover, *Gristy* was decided before the adoption of § 20-1204, which provided a two-year incontestability period with a solitary specified exemption.

**¶20** More on point is *National Life & Casualty Insurance Co. v. Blankenbiller*, 89 Ariz. 253 (1961), invoked by Wilmington. Like *Gristy*, *Blankenbiller* does not address whether contracts of the type before us are void ab initio. Rather, the Court held that a challenge to the validity of an insurance policy for reasons not provided for by statute could not survive an incontestability clause. *Id.* at 256. The Court stated that "every exception to incontestability not expressed in the statute itself is specifically barred as a defense to the policy after the expiration of the incontestability period." *Id.* We read § 20-1204 to allow challenges to the validity of the policy after the incontestability period only for nonpayment of premiums.

**¶21** Courts outside Arizona have construed similar statutes in divergent ways. In *New England Mutual Life Insurance Co. v. Caruso*, 535 N.E.2d 270, 272 (N.Y. 1989), the New York Court of Appeals concluded that an incontestability statute like ours "rests on the legislative conviction that a policyholder should not indefinitely pay premiums to an insurer, under the belief that benefits are available, only to have it judicially determined after the death of the insured that the policy is void because of some defect existing at the time the policy was issued." Based on this provision and the statutory scheme as a whole, the court concluded that a contract with a third party who lacked an insurable interest was enforceable after the incontestability period expired. *Id.* at 274.

**¶22** By contrast, the Delaware Supreme Court rejected *Caruso*, applying the state's common law to hold that "if a life insurance policy lacks an insurable interest at inception, it is void ab initio because it violates Delaware's clear public policy against wagering. It follows, therefore, that if no insurance policy ever legally came into effect, then neither did any of its provisions, including the statutorily required incontestability clause. *PHL Variable Ins. Co. v. Price Dawe 2006 Ins. Trust*, 28 A.3d 1059, 1067–68 (Del. 2011).

**¶23** We view *Caruso* and cases that follow it as the better approach because they give force to Arizona's statutory scheme, including the

8

incontestability clause and the insured estate's remedy. In *Bogacki v. Great-West Life Assurance Co.*, 234 N.W. 865 (Mich. 1931), the Michigan Supreme Court aptly described the incontestability statute as one that "condones no fraud; it merely operates in the nature of a statute of limitations. . . . The statute carries the only permissible exceptions to its bar, and its construction falls within the rule that the inclusion of an exception excludes everything else." *Id.* at 865–66; *accord Wells Fargo Bank, N.A. v. Pruco Life Ins. Co.*, 200 So.3d 1202, 1206 (Fla. 2016) (holding that even though the "policies were procured in furtherance of STOLI schemes," the incontestability statute "does not authorize a belated challenge to a policy"). As the Seventh Circuit explained in the context of Wisconsin's statutory scheme, although policies that lack an insurable interest "are still forbidden," the statute "changed only the remedy for violation, from invalidation of the policy to requiring the insurer to cough up the proceeds rather than . . . being allowed to keep all the premiums and pay nothing to the policy holder." *Sun Life Assurance Co. of Can. v. U.S. Bank Nat'l Ass'n*, 839 F.3d 654, 657 (7th Cir. 2016); *accord PHL Variable Ins. Co. v. Bank of Utah*, 780 F.3d 863, 871 (8th Cir. 2015) ("To declare that a facially valid policy on which [the insurance company] collected substantial premiums for over four years was never 'in force' is simply a fiction."). These opinions reflect the "better and more enlightened view" that an incontestability provision "trumps the absence of an insurable interest." 7 *Williston on Contracts* § 17:5 (Richard A. Lord ed., 4th ed. 2022).

¶24 Wilmington argues that a decision in the negative will leave loopholes that unscrupulous death wagerers can exploit to the detriment of insurance companies. Possibly so; and indeed, we do not express any view on claims in this litigation that may remain after our decision. But once the legislature displaces common law, we shed our policy role and confine ourselves to statutory interpretation. Thus, such concerns must be directed to the legislature.

## CONCLUSION

¶25 For the foregoing reasons, our answer to the certified question is no.