SUSAN T. LANAHAN BYRD, APPELLANT, v. IRENE A. LANAHAN, EXECUTRIX OF THE LAST WILL AND TESTAMENT OF THOMAS J. LANAHAN, DECEASED, RESPONDENT.

No. 19847

November 27, 1989

783 P.2d 426

[Rehearing denied April 17, 1990]

*Herbert L. Waldman,* Las Vegas, for Appellant.

*Joseph and Daniel Foley,* Las Vegas, for Respondent.

## OPINION

By the Court, YOUNG, C. J.:

This appeal involves the disposition of the proceeds of a savings account established by Thomas J. Lanahan, deceased. Thomas executed a will in 1966 that devised and bequeathed all property owned by him, both real and personal, to his wife, Irene Lanahan, respondent and executrix of Thomas' estate. In November 1983, Thomas opened a $50,000 savings account at Nevada Savings and Loan Association (NSLA) in his name only. In November 1984, this account became a one-year certificate that was renewed for one year in November 1985. In September 1986, Thomas executed a document printed on an NSLA bank

card, entitled "Change of Ownership." The card instructed the bank to change the ownership of his account to Thomas J. Lanahan as trustee for the appellant, Susan T. Lanahan Byrd, Thomas' daughter from a previous marriage. The original signature card was also changed to reflect the change in ownership. Thomas received all interest payments from this account until his death in January 1987. Neither Irene nor Susan had knowledge of the account or of the executed change of ownership card.

After Thomas died in January 1987, the bank refused to pay Irene the proceeds of the account because the account named Susan as beneficiary. The bank filed an interpleader action and a bench trial followed. At trial, Irene contended that Susan had no interest in or ownership of the savings account by virtue of the change of ownership card. Susan contended that in executing the change of ownership card, Thomas had created a valid Totten trust which he had not revoked before his death. The district court awarded the proceeds of the account to Irene as executrix, and Susan appealed.

Appellant contends that the district court erred in granting the proceeds of the account to Irene. Appellant asserts that she is the beneficiary of a valid Totten trust, recognized by caselaw and statute in Nevada, and that she is entitled to the entire proceeds of the saving account trust. We agree.

The district court concluded that the account signature card did not constitute a will of Thomas because it did not satisfy the statutory requisites for a testamentary transfer. The court then concluded as a matter of law that the NSLA account signature card purported to make a disposition contrary to Thomas' previously executed will, which, if given effect, would at least partly revoke Thomas' will. Although the court did not specify the basis of its conclusion, it apparently reached this conclusion either on the basis of NRS 133.140 regarding agreements by a testator to convey property previously devised or because it found that our decision in Concannon v. Winship, 94 Nev. 432, 581 P.2d 11 (1978), did not recognize the validity of Totten trusts in Nevada. In either case, the court erred.

 █

Under the terms of NRS 133.140,[1] any agreement to convey

---

[1]NRS 133.140 provides that

> A bond, covenant or agreement made by a testator to convey any property devised or bequeathed in any will previously made *shall not be deemed a revocation* of such previous devise or bequest; but such property shall pass by the devise or bequest, subject to the same remedies on the bond, covenant or agreement, for the specific performance or otherwise, against the devisees or legatees, as might be had by law against the heirs of the testator, if the same had descended to them.

(Emphasis added.)

property previously devised or bequeathed does not effect a revocation, or partial revocation, of the will. Rather, the statute expressly states that the property *shall pass by the devise or bequest,* subject to the remedies on the agreement as might be had against the testator's heirs. Therefore, the court's conclusion that the bank change of ownership card would, if given effect, at least partly revoke Thomas' will, is clearly erroneous, to the extent it is based on NRS 133.140.

Additionally, the court may have reached its conclusion because it found that Totten trusts were not judicially recognized in Nevada. As articulated by the New York Court of Appeals, a Totten trust is a trust created by the

> deposit by one person of his own money in his own name as trustee for another. . . . It is a tentative trust, merely, *revocable at will,* until the depositor dies or completes the gift in his lifetime by some unequivocal act or declaration, such as delivery of the passbook or notice to the beneficiary. *In case the depositor dies before the beneficiary without revocation,* or some decisive act or declaration of disaffirmance, *the presumption arises that an absolute trust was created* as to the balance on hand at the death of the depositor.

In re Totten, 71 N.E. 748, 752 (N.Y. 1904) (emphasis added).

In *Concannon,* we reversed a district court's probate order which gave effect to several Totten trust accounts created prior to the decedent's will. In construing the will, we found that the total funds available in the trust accounts existing at the time decedent drafted her will were substantially identical to the total funds bequeathed under the terms of the will. Moreover, the legatees under the will were also beneficiaries of the trusts. We concluded that it was the clear intent of the testatrix to distribute under the terms of the will all the funds available to her, and to revoke any tentative trusts inconsistent with her testamentary directions. *Concannon,* 94 Nev. at 435, 581 P.2d at 13.

In examining the trust accounts in *Concannon* and recognizing that they were revocable at any time during the lifetime of the depositor, we recognized a basic principle of Totten trusts. Respondent erroneously contends that *Concannon* established that the provisions of a will control any contrary dispositions made by way of a tentative trust, regardless of when those trusts are created. However, where, as here, the Totten trust is created after the will has been executed, it is valid and transfers its proceeds to the named beneficiary upon the depositor's death, unless there is an intent to revoke the trust following its creation. Moreover, because a Totten trust does not revoke a previous will,

the district court erred to the extent it based its conclusion on our holding in *Concannon*.

Respondent contends that NRS 100.085(3) concerning joint tenancy accounts does not contemplate the existence of Totten trusts. Appellant contends that NRS 663.025 specifically recognizes bank deposits in trust. Regardless of whether NRS 100.085 or NRS 663.025 expressly contemplate Totten trusts, we find that nothing in their provisions precludes their existence. We hold that Totten trusts are valid and enforceable under Nevada case law and statutes.

Because the district court erred in impliedly concluding that Totten trusts are not valid in Nevada, we must determine whether the savings account in question was a valid Totten trust. To constitute a Totten trust, as with any trust, there must be an explicit declaration of trust or circumstances which show beyond doubt that a trust was intended to be created. In re Madsen's Estate, 296 P.2d 518, 519 (Wash. 1956).

In the present case, the account was designated Thomas Lanahan as trustee for Susan Lanahan Byrd and the signature card provided that the account was revocable by Thomas at any time and that the funds remaining after his death belonged to Susan as beneficiary. These provisions on the signature card clearly establish that a tentative trust was intended. Moreover, there is strong evidence of trust intent where, as here, the beneficiary is the daughter of the decedent by his former marriage and no provision was made for her in his will. Furthermore, there was no evidence of any objective contrary to establishing a trust. Finally, Irene testified at trial that Thomas had never established a similar trust account, indicating that he did not unintentionally create one for Susan.

The written declaration of trust on the bank signature card specifically identifies Thomas' intention to create a revocable trust for Susan. We hold that the signature card, together with the surrounding circumstances, is sufficient evidence to show Thomas' intent to create a trust in favor of Susan. Accordingly, we hold that the savings account was a valid Totten trust.

Nonetheless, respondent contends that the savings account signature card was invalid because NRS 123.230(2) prohibited Thomas from making a gift of community property without her consent.[2] However, under NRS 123.250(1)(b), each spouse has

---

[2]NRS 123.230(2) provides that "[n]either spouse may make a gift of community property without the express or implied consent of the other."

the power of testamentary disposition over his or her interest in the community property, with or without the other spouse's consent.[3] Respondent contends that Thomas' power of testamentary disposition was executed in her favor. Furthermore, because she maintains that the savings account signature card was not a valid testamentary instrument, respondent argues that it was not effective at disposing of Thomas' share of the community property. However, although a Totten trust is revocable during the decedent's life, it becomes effective as a testamentary disposition of the assets it contains at the donor's death.

We construe NRS 123.250(1)(b) to mean that each spouse may dispose of one-half of the total of all community property. The district court found that the total value of the community property at the time of Thomas' death was approximately $200,000. Thus, because the $50,000 in the trust account is less than half of $200,000, we hold that appellant is entitled to the entire proceeds of the valid Totten trust account.

Accordingly, we reverse the district court's order and grant the entire proceeds from the savings account to appellant.

STEFFEN, SPRINGER, MOWBRAY, and ROSE, JJ., concur.

---

[3]NRS 123.250(1) provides, in pertinent part:

1. Upon the death of either husband or wife:
 (a) An undivided one-half interest in the community property is the property of the surviving spouse and his or her sole separate property.
 (b) The remaining interest is subject to the testamentary disposition of the decedent. . . .