ROBERT S. HANNAM, Co-Trustee of the Family Share of the HANNAM FAMILY TRUST, and Trustee of the SHERWOOD R. HANNAM LIVING TRUST, Appellant/Cross-Respondent, *v.* DENNIS BROWN, Co-Trustee of the HANNAM FAMILY TRUST, Respondent/Cross-Appellant.

No. 28655

April 9, 1998

956 P.2d 794

*Thomas F. Riley,* Reno, for Appellant/Cross-Respondent.

*Law Office of Richard C. Blower,* Sparks, for Respondent/Cross-Appellant.

## OPINION

*Per Curiam:*

This case involves disagreement between trust beneficiaries concerning the distribution of an inter vivos trust. Sherwood R. Hannam and Cleo M. Hannam, husband and wife, created the Hannam Family Trust Agreement on May 22, 1991. The trust was of the "A-B" variety, splitting the trust assets evenly into a "Family Trust Share" and a "Survivor's Trust Share" upon the

death of either spouse. Sherwood and Cleo subsequently placed most of their assets into the trust, creating approximately $1,000,000.00 in trust assets. Cleo died on January 13, 1992; however, Sherwood did not immediately divide the trust into the family and survivor's shares specified in the trust. No division occurred until the district court ordered, on September 7, 1993, that the trust be retroactively divided into two equal shares.

The trust provided that the family share was to be divided evenly between Robert S. Hannam, Sherwood's son from a previous marriage, David S. Hannam, Robert's son, Dennis Brown, Cleo's nephew, and Lance Brown, another of Cleo's nephews. The same parties were to serve as co-trustees of the family share. Lance died on January 10, 1992, three days before Cleo's death. The district court determined that Lance's one-fourth of the family share lapsed because he predeceased Cleo, and ordered that the family share be divided equally among the remaining three beneficiaries.

The trust provided that the survivor (Sherwood or Cleo) would be the sole trustee of the survivor's share, and could distribute the survivor's share either by a probated will or by doing nothing, which would cause the survivor's share to be added to the family share upon the death of the survivor. The trust specified that Robert, David, Dennis and Lance were to take over as trustees of the survivor's share if the survivor became incapacitated. Sherwood did create a "pour-over" will, which provided that, upon Sherwood's death, the survivor's share would pour over into the Hannam Family Trust.

Robert contacted Dennis in April 1993, to advise him that Robert, David and Dennis were the surviving named trustees of the family share. Dennis travelled to Nevada to discuss the matter with Robert and David. Sherwood had developed some serious health problems, and there was some confusion and disagreement between the parties and their attorneys regarding Sherwood's mental capacity to serve as trustee of the survivor's share. Dennis claims to have discovered that Robert had been issuing checks to himself and paying for Sherwood's health care, support, and maintenance from the family share without consulting the other co-trustees. Robert claims that, on July 4 or 5, 1993, Dennis contacted nearly all of the banks where Sherwood's funds were held and advised them that Sherwood was "possibly incompetent." Robert further claims that, as a result of these letters, Sherwood's accounts were frozen, and Sherwood was unable to pay his personal expenses.

Following Dennis' assertion that Sherwood was incompetent, Sherwood replaced his existing will with a second will that poured the survivor's share over to a new trust. The new trust,

entitled the "Sherwood R. Hannam Trust" and dated July 13, 1993, was for the benefit of Robert and David only. Sherwood was the sole trustee of the Sherwood R. Hannam Trust during his lifetime, and provided that Robert and David would serve as co-trustees after Sherwood's death.

Dennis claims that Sherwood was determined to be incapacitated in August of 1993, and that Robert, David and Dennis took over as co-trustees of the survivor's share thereafter. The trust fund was split into the survivor's and family shares in September, 1993. The co-trustees were unable to agree on the number of co-trustee votes required to administer either trust share, so the district court ordered that a unanimous vote would be required for actions involving the family trust share while only a majority vote would be necessary for actions involving the survivor's share.

Sherwood died on November 24, 1993, after which Dennis filed an opposition to Sherwood's will, arguing that Sherwood lacked capacity at the time the will was executed, that the proper formalities for a valid will were not followed, and that Robert may have exercised undue influence over Sherwood. A trial on the will contest was held on June 9 and 10, 1994. The trial ended when the district court concluded that Dennis had failed to make a prima facie showing that Sherwood lacked capacity. Dennis agreed to an order dismissing the will contest with prejudice and requiring him to reimburse Sherwood's estate $16,000.00 in out-of-pocket costs. The will was subsequently probated, and the survivor's share assets were transferred to the Sherwood R. Hannam Trust.

In May 1995, Robert and David filed joint motions for partial summary judgment, asking the district court to enforce the Hannam Family Trust's no-contest clause against Dennis. This clause provided, in pertinent part, that any beneficiary contesting "either creator's Estate or Will" would forfeit his or her interest in the trust and co-trustee status. Dennis filed a request for an order for payment of fees and costs shortly thereafter. Robert filed an alternative motion for partial summary judgment in October 1995, asking for a determination that Lance's portion of the family share lapsed when he predeceased Cleo.

On February 23, 1996, the district court denied Robert and David's requests for partial summary judgment on the no-contest clause issue, granted Robert's motion for partial summary judgment on the lapsing of Lance's portion of the family share, and denied Dennis' request for payment of trustee's fees and reimbursement expenses. Robert now appeals the denial of his motions for partial summary judgment on the no-contest clause issue and Dennis cross-appeals the court's partial summary judgment on the lapsing of Lance's portion of the family share, denial

of his request for payment of fees and costs, and several other claimed errors.

## The no-contest clause

Robert appeals the district court's denial of his partial motions for summary judgment relating to the no-contest clause of the trust. Robert argues that Dennis' opposition to Sherwood's will invoked the forfeiture provision of the no-contest clause, thereby preventing Dennis from receiving any benefit under the trust or serving as co-trustee. The no-contest clause provides, in pertinent part,

> [I]f any beneficiary herein asserts any claim . . . or interest against or in either Creator's Estate or Will or any properties of this Trust, other than pursuant to the express terms hereof or of said Will, directly or indirectly contests, disputes, or calls into question before any court, the validity of this declaration of trust or of said Will or the validity of any provisions of this Declaration of Trust or of said Will, then;
>
> A.   Such beneficiary shall thereby absolutely forfeit any and all beneficial interests of whatsoever kind and nature which such beneficiary might otherwise have under this Declaration of Trust.
>
> . . . .
>
> C.   If then acting as a Trustee, such claiming, electing or contesting beneficiary shall automatically cease to be a Trustee.

Dennis does not dispute Robert's assertion that Dennis' challenge to Sherwood's will falls under the facial provisions of the no-contest clause, and Dennis also does not deny that the no-contest clause is generally enforceable. Instead, Dennis relies on the district court's conclusion that "a forfeiture clause in a will or trust is subject to an exception when the contest is made in good faith and with probable cause." Accordingly, the disposition of Robert's appeal turns on this court's determination of whether such a good faith exception exists and, if such an exception is recognized, on whether the district court erred in finding that Dennis' contest of Sherwood's will was in good faith and based on probable cause.

The question of whether a court may recognize an exception to no-contest clauses in wills or trust instruments for good faith challenges based on probable cause is an issue of first impression in Nevada. The district court relied on an American Law Reports annotation discussing the approach of other states to this issue, electing to follow the line of cases recognizing a good faith

challenge exception. *See* Annotation, *Validity and Enforceability of Provision of Will or Trust Instrument for Forfeiture or Reduction of Share of Contesting Beneficiary,* 23 A.L.R. 4th 369 (1983). After consideration of the cases relied upon by the district court and various other materials, we recognize a clear trend favoring an exception for good faith challenges based on probable cause.

Robert addresses this trend by arguing that the majority of cases recognizing an exception for good faith challenges arose in states that have also adopted the Uniform Probate Code, section 3-905, which provides, in pertinent part, that "a provision in a will purporting to penalize any interested person for contesting the will or instituting other proceedings relating to the estate is unenforceable if probable cause exists for instituting proceedings." Robert suggests that the courts' allowance of a good faith challenge exception in those cases is "based primarily on" these legislative enactments. He contends that, because the Nevada Legislature rejected Uniform Probate Code, section 3-905, in 1995, recognition of an exception for good faith challenges would contravene expressed legislative intent.

In fact, of the states that have judicially recognized an exception for good faith challenges based on probable cause, most have not adopted Uniform Probate Code, section 3-905. *See* Restatement (Second) of Property § 9.1 n.1 (1982); 23 A.L.R. 4th at 377-78. Of those few that have also adopted Uniform Probate Code, section 3-905, most did so only *after* judicially recognizing an exception for good faith challenges based on probable cause. Restatement (Second) of Property § 9.1 n.1; 23 A.L.R. 4th at 377-78. Accordingly, Robert's suggestion that courts have simply followed expressions of legislative intent on this issue is clearly unfounded.

Robert also fails to substantiate his assertion that the Nevada Legislature expressed an intent to reject the good faith challenge exception. Robert cites to section 89 of A.B. 445 of the 1995 legislative session, consideration of which was indefinitely postponed. However, A.B. 445 proposed adoption of the Uniform Probate Code in its entirety, with no specific mention of Uniform Probate Code, section 3-905. The legislature's decision to postpone consideration of adopting the entire Uniform Probate Code should not be recognized as an expression of legislative intent regarding the specific provisions of Uniform Probate Code, section 3-905.

This court has historically construed trusts in a manner effecting the apparent intent of the settlor. *See, e.g.,* Byrd v. Lanahan, 105 Nev. 707, 783 P.2d 426 (1989); Nicosia v. Turzyn, 97 Nev. 93, 624 P.2d 499 (1981). Inspection of the no-contest clause in

the Hannam Family Trust reveals no indicia of intent to create an exception for good faith challenges based on probable cause. However, failure to recognize such an exception by implication would chill assertion of legitimate claims. We conclude that public policy favors recognition of the implied exception to no-contest clauses for good faith challenges based on probable cause, and now elect to follow the modern trend favoring the exception. Accordingly, we conclude that the district court did not err in recognizing the exception.

There remains the issue of whether the district court properly found that Dennis' contest of Sherwood's will fell under the exception for good faith challenges based on probable cause. Robert argues that a clear and convincing evidence standard should apply to this court's review of the district court's determination. However, Robert cites no legal authority for this proposal, and it is unwarranted under the circumstances. "A district court's findings [of fact] will not be disturbed unless they are clearly erroneous and are not based on substantial evidence." Gibellini v. Klindt, 110 Nev. 1201, 1204, 885 P.2d 540, 542 (1994); see also NRCP 52(a).

In concluding that Dennis contested Sherwood's will in good faith and with probable cause, the district court reasoned that Dennis was acting in accord with his fiduciary duty as a trustee. Robert argues that Dennis contested Sherwood's will in his individual capacity, rather than as a trustee. Inspection of the will contest documents confirms that Dennis instituted the will contest in his individual capacity as a beneficiary rather than as a trustee.

Although the district court erred in concluding that Dennis contested Sherwood's will in his capacity as a trustee, "this court will affirm the order of the district court if it reached the correct result, albeit for different reasons." Rosenstein v. Steele, 103 Nev. 571, 575, 747 P.2d 230, 233 (1987). "[I]n the absence of express findings of fact by the district court, the supreme court will imply findings where the evidence clearly supports the judgment." Trident Construction v. West Electric, 105 Nev. 423, 426, 776 P.2d 1239, 1241 (1989). Accordingly, the district court's finding that Dennis' contest of Sherwood's will was in good faith and based on probable cause should not be set aside if the record contains substantial evidence to support the finding.

Although Dennis contested Sherwood's will on three separate grounds, Robert addresses only the challenge alleging lack of testamentary capacity. Accordingly, we need only determine whether substantial evidence supports the district court's finding that Dennis challenged Sherwood's testamentary capacity in good faith and with probable cause.

Sherwood was eighty-two years old when he executed the contested will, and had been recently hospitalized with hemiparesis and aphasia.[1] Robert acknowledges that a videotape of Sherwood was played at trial, and that the videotape showed that Sherwood was incapable of verbal communication. Robert also concedes that he provided Dennis with a letter from an attorney, Robert E. Hales, in which the attorney concluded that Sherwood lacked capacity to administer the Hannam Family Trust. In addition, Sherwood was ultimately removed as trustee of the Hannam Family Trust, and replaced by the named successor trustees. Robert argues that, despite this evidence, Sherwood did not lack the cognitive capacity to form testamentary intent. The district court did ultimately determine that Dennis failed to make a prima facie showing that Sherwood lacked testamentary capacity at the time that the will was executed. However, the dispositive issue in this appeal is whether there was substantial evidence to support the district court's determination that Dennis' testamentary capacity challenge was in good faith and based on probable cause. We conclude that the foregoing evidence, when considered in totality, constitutes sufficiently substantial evidence to support the district court's conclusion that Dennis' testamentary capacity challenge was in good faith and based on probable cause. Accordingly, we conclude that the district court's finding on this issue was not clearly erroneous, and, therefore, that it should not be disturbed.

## Sherwood's final illness expenses

Robert, David and Dennis were the co-trustees of the family share during Sherwood's lifetime, and a unanimous vote of the co-trustees was required before any co-trustee could take action affecting the family share. Despite this restriction, Robert issued checks from the family share, without Dennis' consent, for payment of Sherwood's medical expenses. Dennis argues that these payments were improper, and that the family share should be compensated for the expenditures.

The Hannam Family Trust provided, in pertinent part,

> TRUST INVASION:  Should the trustee determine the Surviving Creator to be in need of funds for his or her general support, health, maintenance or education to enable him or her to remain in the living standard to which he or she has

---

[1]According to a consulting physician, Dr. R. A. Battie, these conditions, which resulted from strokes, rendered Sherwood incapable of "effective speech" and made his writing "very difficult to understand." However, Dr. Battie also opined that Sherwood "appears to understand quite clearly what is said to him."

become accustomed at the time this FAMILY TRUST SHARE is created and becomes irrevocable, the Trustee may . . . distribute such sums from the principal of the FAMILY TRUST up to the whole thereof, as the Trustee feels necessary to satisfy the above limited purposes.

The trust also provided that, upon the death of the surviving creator, the trustee shall pay all final illness, funeral and burial expenses from the "Trust Estate."

Although the Hannam Family Trust specified that it was to be divided into the family and survivor's shares upon the death of either settlor, it was not divided until twenty months after Cleo's death. When it was eventually divided, the family share was funded with one-half of the trust assets in existence at the time of Cleo's death. The survivor's share was funded with the other half, less the interim payments for Sherwood's health care and living expenses.

Upon considering the trust language directing payment of final illness expenses from the "Trust Estate," the district court concluded that the settlors had assumed that Sherwood would not exercise his option to will the survivor's share into a different trust, and that the survivor's share and the family share would be recombined upon Sherwood's death, forming the "Trust Estate." Based on this conclusion, the court ordered that the payments of Sherwood's last illness expenses should be divided equally between the family and survivor's shares. Because division of the Hannam Family Trust into the family and survivor's shares occurred twenty months late, and none of Sherwood's last illness expenses for that twenty-month period were deducted from the family share at the time of division, Robert commenced payment of such expenses from the family share thereafter.

Dennis argues that Robert's payments of Sherwood's medical expenses from the family share were not authorized under the trust invasion provision recited above, as that provision places such payments within the discretion of the trustees, invoking the unanimous vote requirement. However, the district court concluded that the settlors intended such expenses to be deducted from the entire Hannam Family Trust corpus, and ordered that the family share was, therefore, liable for one-half of the expenses. The court's determination of the settlor's intent in this matter was a finding of fact, and should not be disturbed unless clearly erroneous. *See Gibellini,* 110 Nev. 1201, 885 P.2d 540. We conclude that the trust language provided substantial evidence supporting the district court's finding, and, therefore, conclude that the court's finding was not clearly erroneous. Accordingly, we conclude that the district court did not err in ordering one-half of Sherwood's final medical expenses to be paid from the family share.

Because Robert's payment of Sherwood's final illness expenses from the family share was pursuant to the district court's conclusion that the family share was liable for such expenses, the court did not err in permitting Robert to issue such payments without Dennis' consent. The payments were apparently based on the court's attempt to equalize the distribution between the survivor's and family shares, and not on the discretionary "trust invasion" provision requiring unanimous consent of the co-trustees. The unanimous co-trustee consent requirement, affecting the discretionary aspects of the co-trustees' duties, did not give Dennis the authority to veto the district court's orders. Accordingly, we conclude that the court did not err in allowing the payments.

*Periodic payments to Robert*

Robert, David and Dennis each received some principal distributions from the family share; however, the district court determined that the funds received by Robert were not to be deducted from his portion of the family share upon final distribution. The Hannam family trust specifically provided that Robert was to receive periodic payments from the "Trust Estate" until the final distribution of the "Trust Estate." This provision was for Robert only, and similar periodic payments were not authorized for David or Dennis. Dennis argues that the payments to Robert should be treated similarly to the distributions to David and Dennis, and that any such distribution should be deducted from the recipient's portion of the family trust share upon final distribution.

Consistent with its earlier conclusion that the settlors intended the term, "Trust Estate," to refer to the combined corpus of the family and survivor's shares,[2] the district court reasoned that the periodic payments to Robert were not meant to be advance distributions of his portion of the family share. As discussed above, the district court did not err in concluding that the settlors intended distributions from the "Trust Estate" to be drawn from the combined corpus of the family and survivor's shares. The district court did order that the survivor's share must compensate the family share for one-half of the distributions to Robert, all of which had been drawn from the family share. This order was consistent with the court's allocation of payments for Sherwood's final medical expenses, dividing them equally between the family and survivor's shares as though the distributions had come from the undivided "Trust Estate."

---

[2]This is explained in the discussion of payment of Sherwood's final illness expenses from the family share, above

We conclude that the special periodic payment provision for Robert constituted substantial evidence of the settlors' intent to support Robert independently of his future portion of the family share, and that the district court's finding that the settlors so intended was not clearly erroneous. Upon consideration of the district court's appraisal of the settlor's intent, we conclude that the court did not abuse its discretion in refusing to order that Robert's periodic payments should be deducted from his portion of the family trust share upon final distribution.

*Lapsing of Lance's share*

The district court granted Robert's motion for partial summary judgment confirming the lapse of Lance's portion of the family share. Noting that Lance predeceased Cleo by three days, the district court granted Robert's motion because ''[t]he anti-lapse statute, NRS 133.200, only saves a gift flowing from 'any estate' if the deceased devisee or legatee had lineal descendants.'' The court further reasoned that Lance's interest was a ''mere expectancy,'' and that, because his interest in the trust was not vested at the time of his death. his share lapsed. The district court's decision in this matter was a conclusion of law, and, as such, is appropriate for *de novo* review. Bopp v. Lino, 110 Nev. 1246, 885 P.2d 559 (1994).

The language of the Hannam Family Trust directly addressed the possibility of Lance predeceasing one of the settlors. The trust provided, in pertinent part, that ''[t]he shares established for Dennis Brown and Lance Brown shall be known as the Wife's Trust Share, if either Dennis Brown or Lance Brown should die without issue, their share shall go to the survivor of either Dennis Brown or Lance Brown.'' Robert and David enjoyed a similar benefit with respect to each other. The effect of these provisions was to prevent either settlor's named relatives from collectively receiving less than one-half of the family share, even if one of the named relatives predeceased one of the settlors.

We conclude that the district court erred in applying NRS 133.200 under the present circumstances. NRS 133.200 addresses wills rather than trusts, governing situations in which an estate is ''devised or bequeathed to any child or other relation of the testator.'' In addition, the statute itself provides that it applies only ''in the absence of provisions in the will to the contrary.'' This court has not approved of the application of this statute in contravention of the distribution provisions in a trust instrument, and doing so would violate the express limitations of the statute as well as the settlors' intent.

The settlors clearly intended that each of them would pass one-half of the trust corpus to his or her own named relatives upon distribution. The trust language addresses the precise situation before us, specifying that Lance's portion of the family share is to be distributed to his brother, Dennis. The district court concluded that the trust refers to the share "established" for Lance, and that no shares were legally "established" until the family share was created upon the death of a settlor. However, construing the settlors' use of the term "established" in this legalistic manner would render the provision at issue completely ineffective and without purpose. We are certain that the settlors did not intend to include ineffective provisions in the trust instrument, and that they used the term "established" to connote their earlier specification of the share to which Lance would be entitled. Because this court has historically construed trusts in a manner effecting the apparent intent of the settlor, we conclude that the district court erred in declining to follow the distribution provisions of the trust instrument.

*Fees and expense reimbursement*

The district court refused Dennis' request for payment from the family share of the co-trustees' attorneys' fees, expert fees, costs, travel expenses and personal fees for serving as co-trustees. The Hannam Family Trust provided that the co-trustees "shall be entitled to be compensated for their reasonably necessary expenses as well as reasonable compensation for their services not to exceed (1) percent of the Trust corpus per annum."

The district court provided no explanation for its refusal to reimburse the co-trustees for their "reasonably necessary expenses." Robert suggests that the court's refusal reflects its determination that neither party should receive compensation for attorneys' fees incurred as a result of Dennis' contest of Sherwood's will. However, the will contest is readily distinguishable from the co-trustees' reasonably necessary expenses. Under the clear language of the trust instrument, the parties are entitled to show evidence of reasonably necessary expenses and be compensated accordingly.

A district court's order regarding distribution or administration of trust funds will generally not be disturbed unless it clearly demonstrates an abuse of discretion. *See, e.g.,* Diotallevi v. Sierra Dev. Co., 95 Nev. 164, 591 P.2d 270 (1979); Abel v.

Lowry, 68 Nev. 284, 231 P.2d 191 (1951). Because the district court offered no basis for its refusal to reimburse the co-trustees for their reasonably necessary expenses, and such reimbursement is specifically instructed by the trust instrument, we conclude that the district court abused its discretion in refusing to allow the requested reimbursement.

Dennis also requested compensation for the co-trustees for serving as such, as provided by the trust instrument. The district court refused to allow such compensation, citing "protracted arguments and disputes" among the co-trustees as its basis for refusal. Again, the trust instrument explicitly instructed that the co-trustees were to be compensated for their services, and the district court has offered no legal explanation for refusing to uphold the provision of the trust instrument. Because judicial economy alone is an insufficient basis for requiring a party to waive its contractual rights, we conclude that the district court's refusal to allow compensation of the co-trustees, as required by the trust instrument, constitutes an abuse of discretion.

*Claimed legal errors and procedural irregularities*

Dennis argues that he is entitled to a new hearing under NRCP 59 because the district court made several legal errors and because of certain procedural irregularities. Although a hearing is not synonymous with a trial, the hearing at issue was conducted pursuant to NRS 164.030, which falls under the provisions of NRCP 59. *See* NRCP 81(a). NRCP 59 provides that a new trial *may* be granted under certain circumstances, including irregularities in the proceedings "by which either party was prevented from having a fair trial," and errors of law properly objected to by the moving party.

Dennis claims that the district court did not allow the parties to call witnesses for presentation of factual testimony. Although Dennis argues that the Nevada Rules of Civil Procedure govern hearings which are held pursuant to a petition for instructions relating to trust administration, and that he was, therefore, entitled to call witnesses and present evidence, he fails to make any specific allegations of how the claimed denial prejudiced his right to a fair hearing. We conclude that, without reference to any specific witnesses or evidence that Dennis wished to present, or an explanation of how the inability to present certain witnesses or evidence prejudiced his right to a fair hearing, Dennis has failed to demonstrate that the claimed "procedural irregularities" denied him a fair hearing.

Dennis also asserts the claimed errors of law forming the basis for his appeal as grounds for a new hearing. As discussed above, we conclude that the district court did err in finding that Lance's portion of the family share lapsed, and that the court abused its discretion in denying the co-trustees reimbursement for their reasonably necessary expenses and compensation for serving as co-trustees. The redistribution of trust assets to allocate Lance's share to Dennis and to distribute trustee fees to the co-trustees is essentially a mathematical task, and a hearing would not be useful in this matter. An additional hearing may be useful for the limited purpose of determining the co-trustees' reasonably necessary expenses; however, the district court may be able to make these determinations based on the party's previous submissions. Accordingly, we decline to order a mandatory hearing; however, the district court may hold a hearing for the limited purpose of determining the co-trustees' reasonably necessary expenses, if the court determines that such a hearing is appropriate.

We reverse the district court's partial summary judgment on the lapsing of Lance Brown's portion of the family share; affirm the district court's order denying partial summary judgment on the no-contest clause; affirm the order allowing one-half of Sherwood's final medical expenses to be paid from the family share; affirm the district court's decision not to order deduction of the periodic payments to Robert from his portion of the family trust share; decline to order a new hearing; and remand the case to the district court with instructions to allow the co-trustees to claim reimbursement of their reasonably necessary expenses and compensation for serving as co-trustees.