# IN THE SUPREME COURT OF THE STATE OF NEVADA

IN THE MATTER OF: THE ATS 1998
TRUST, DATED DECEMBER 17, 1998.

No. 68748

FILED

JUL 2 8 2017

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY_____
DEPUTY CLERK

SUSAN PILLSBURY,
Appellant,
vs.
LAURA J. TOMPKINS,
Respondent.

## ORDER OF AFFIRMANCE

This is an appeal from a district court order denying a petition seeking a declaration that a trust beneficiary violated a no-contest clause. Eighth Judicial District Court, Clark County; Gloria Sturman, Judge.

Appellant Susan Pillsbury and her husband Andrew Tompkins created the ATS 1998 Trust. Among its provisions, the trust contained the following no-contest provision:

> **No-Contest Provision.** The Trustors specifically desire that this Trust Indenture and these Trusts created herein be administered and distributed without litigation or dispute of any kind. If any beneficiary of these Trusts or any other person, whether stranger, relative or heir, or any legatee or devisee under the Last Will and Testament of either of the Trustors or the successors-in-interest of any such persons, including Trustors' estates under the intestate laws of the State of Nevada or any other state lawfully or indirectly, singly or in conjunction with another person, seek or establish to assert any claim or claims to the assets of these Trusts established herein, or attack, oppose or seek to set aside the administration and distribution of the Trusts, or to

invalidate, impair or set aside its provisions, or to have the same or any part thereof declared null and void or diminished, or to defeat or change any part of the provisions of the Trusts established herein, then in any and all of the abovementioned cases and events, such person or persons shall receive One Dollar ($1.00), and no more, in lieu of any interest in the assets of the Trusts or interest in income or principal.

The trust also provided that all income beneficiaries have a right to compel a written accounting of the trust, so long as more than a year had elapsed since the last such accounting. Finally, the trust provided that the trustee would be liable to the trust for injuries resulting from the trustee's fraud, willful misconduct, or gross negligence.

When Andrew died in 2004, Susan, as sole-surviving trustee, was tasked with ensuring that Andrew's share of the trust corpus was distributed to her son from a prior marriage and three of Andrew's children from a prior marriage, including respondent Laura Tompkins. Laura, along with the other three beneficiaries, purportedly received her share of Andrew's trust assets, totaling over $3,500,000 in value, by 2007.

In 2012, Laura's counsel sent Susan a letter formally requesting an accounting of the trust for 2004-2012 pursuant to the trust provision compelling the trustee to perform an accounting. Susan's counsel responded, claiming that because the trust no longer existed due to distribution of Andrew's assets following his death in 2004, it was unreasonable to expect an accounting in 2012.

Thereafter, Laura petitioned to, among other things, compel an accounting, ensure that Susan complied with the trust instrument, and compel Susan to pay a surcharge in the event that she had mismanaged the

trust. Ultimately, the probate commissioner issued a report and recommendation, in which it found Laura's petition to be time-barred.

Laura filed an objection to the report and recommendation. The district court allowed limited discovery to determine whether the probate commissioner properly deemed Laura's petition to be untimely. Laura later stipulated to withdrawing her objection after receiving discovery indicating that her claims were in fact time-barred. The district court then formally adopted the probate commissioner's report and recommendation.

Thereafter, Susan sought not only attorney fees and costs, but to enforce the trust's no-contest clause and to force Laura to repay all but one dollar of her trust share due to her initial petition. The district court found that Laura's petition was permissible under both the trust's terms and Nevada law, therefore, the no-contest clause had not been violated.

## DISCUSSION

### Standard of Review

The parties dispute the proper standard of review in this matter. Susan argues that whether Laura violated the no-contest clause is a question of law, necessitating de novo review. Laura argues that whether her actions violated the trust's no-contest clause is a matter of fact and this court should review the district court's determination only for clear error. Neither party is completely correct because the ultimate issue in this case is a mix of law and fact.

The district court's factual findings, even in the context of a no-contest clause, "will not be disturbed unless they are clearly erroneous and are not based on substantial evidence." *Hannam v. Brown*, 114 Nev. 350, 357, 956 P.2d 794, 799 (1998) (internal quotation marks omitted); *see Jones v. Jones*, Docket No. 66632 (Order of Affirmance, July 14, 2016) at 8 ("While a party's conduct is a question of fact, whether said conduct violates a no-

SUPREME COURT
OF
NEVADA

(O) 1947A

contest clause is a legal question reviewed de novo."). Therefore, we will review the district court's findings regarding what actions Laura actually took as a matter of fact deserving of deferential treatment. Whether those actions violated the no-contest clause, or whether those actions were protected under the safe harbor provisions of NRS 163.00195(3), however, requires interpreting the clause and the safe harbor statute respectively. Accordingly, those are questions of law necessitating de novo review.

*The district court incorrectly determined that Laura's petition did not violate the no-contest clause.*

Susan argues that Laura's petition constituted numerous *prima facie* violations of the no-contest clause. We agree.

Typically, "[a] suit to construe the language of a will is not a contest of the will and hence is not a violation of a no-contest provision, unless the construction advocated by the person bringing the construction suit would invalidate the dispositive instrument or a provision thereof." Restatement (Second) of Property, Donative Transfers § 9.1, cmt. c. (Am. Law. Inst. 1983)). However, this court must enforce a no-contest clause and construe it to carry out the settlors' intent. NRS 163.00195(1), (2); *see also Hannam*, 114 Nev. at 356, 956 P.2d at 798 ("This court has historically construed trusts in a manner effecting the apparent intent of the settlor.").

The no-contest provision in this trust is considerably broad. The no-contest clause prevents a beneficiary from "attack[ing], oppos[ing] or seek[ing] to set aside the administration and distribution of the Trusts." Although the record indicates that Laura primarily sought to ensure that the trust was administered under her understanding of the trust, it also indicates that she challenged Susan's administration thereof. In her petition, while asking for an accounting, Laura alleged that trust property had "been wrongfully disposed of by Susan." Laura goes on to allege that

Susan "enriched herself at the expense of [Laura] and the other beneficiaries" and that Susan breached her fiduciary duties. Even if all of Laura's allegations are true, the petition, and many of the requests therein, constitute *prima facie* violations of the extremely broad no-contest clause. Accordingly, we conclude that the district court erroneously found that Laura's petition did not implicate the no-contest clause, notwithstanding the safe harbor analysis below.

*Laura's petition is saved by the safe harbor statute.*

Susan argues that none of the requests in Laura's petition falls within the statutory safe harbors because (1) Laura did not seek to enforce the trust's terms, but to rewrite them; and (2) Laura had no legal rights to enforce because Laura's rights extinguished upon final distribution in 2007. We disagree.

Although NRS 163.00195[1] requires the court to enforce no-contest clauses and to follow the settlor's intent, the law also provides certain situations in which the court should not reduce or eliminate a beneficiary's share of the trust. NRS 163.00195(3). Specifically, the provision, known as the safe harbor provision, reads as follows:

> 3. *Notwithstanding any provision to the contrary in the trust*, a beneficiary's share must not be reduced or eliminated if the beneficiary *seeks* only to:
>
> (a) Enforce the terms of the trust, any document referenced in or affected by the trust, or any other trust-related instrument;
>
> (b) Enforce the beneficiary's legal rights related to the trust, any document referenced in or

---

[1]NRS 163.00195 was recently amended by the Legislature. A.B. 314, 79th Leg. (Nev. 2017). The amendments do not affect our decision in this case.

affected by the trust, or any trust-related instrument; or

    (c) Obtain a court ruling with respect to the construction or legal effect of the trust, any document referenced in or affected by the trust, or any other trust-related instrument.

*Id.* (emphasis added). Seek, in its purest sense, means to take an action with the intent of acquiring something. *See Seek*, Merriam Webster's Collegiate Dictionary (10th ed. 1996) (defining seek, *inter alia*, as "to go in search of," to "look for," "to ask for," "to try to acquire or gain," and "to make an attempt").

NRS 153.031 provides a beneficiary to a trust with a legal right to petition the district court for a number of reasons, including "[c]ompelling the trustee to report information about the trust or account, to the beneficiary," NRS 153.031(1)(h)[2], "[i]nstructing the trustee," NRS 153.031(1)(g), or "[a]ppointing or removing a trustee," NRS 153.031(1)(k). Moreover, "[a] beneficiary whose demand for an account . . . is rejected or deemed rejected must file a petition seeking the court's review of the trustee's rejection within 60 days after the rejection date." NRS 165.143(1).

The record indicates that Laura asked the district court to interpret the trust; compel an accounting to verify Laura's theory of mismanagement; and, in the event that Susan had improperly managed the trust, to hold Susan responsible and remove her as trustee. The parties disagreed in their interpretation of the trust, but the district court never ruled on the merits of the disagreement, instead dismissing Laura's petition as untimely. Even if Laura would have been found incorrect in her

---

[2]NRS 153.031(1)(h) was recently amended by the Legislature." A.B. 314, 79th Leg. (Nev. 2017). The amendment does not affect our decision in this case.

interpretation, the fact remains that she sought to have the trust enforced, she sought to enforce her legal rights (under both the trust and Nevada law), and she sought a court ruling with respect to construing the trust. Despite Susan's argument to the contrary, NRS 163.00195 does not require a beneficiary succeed in her action, only that she seeks enforcement of the trust, enforcement of her legal rights, or a court order construing the trust. The record demonstrates that is precisely what Laura asked the district court to do, therefore, we conclude that her petition falls within the safe harbor provisions of NRS 163.00195(3).

Susan's second argument is similarly unpersuasive. She is correct that the trust only gives the rights that Laura sought to exercise to income beneficiaries and that when Laura filed her petition she was no longer due any income under the trust. However, NRS 163.00195(3) provides its safe-harbor protections "[n]otwithstanding *any* provision to the contrary in the trust." (Emphasis added). This includes the provision granting rights only to "income" beneficiaries.

The purpose of a no-contest clause is to enforce the settlor(s)' wishes, not to discourage a beneficiary from seeking his or her rights. The law disfavors forfeiture unless the beneficiary challenges the trust itself or the will of the settlor(s), rather than challenging or inconveniencing the trustee. In this case, Laura did not challenge Susan in her capacity as joint-settlor, but instead challenged Susan in her capacity as sole trustee. We conclude that, the fact that Laura was no longer due any income did not divest her of her right to make inquire as to whether the trustee managed the trust properly.

Therefore, the district court properly concluded that the safe-harbor statutes apply to prevent Susan from compelling Laura to forfeit her

trust income despite incorrectly concluding that her petition did not offend the no-contest clause itself.[3]

## CONCLUSION

Although Laura's petition violated the Trust's no-contest clause, we conclude that her petition falls within NRS 163.00195(3)'s safe harbor provisions. Accordingly we

ORDER the judgment of the district court AFFIRMED.

_____, J.
Douglas

_____, J.
Gibbons

_____, J.
Pickering

cc:     Hon. Gloria Sturman, District Judge
        Solomon Dwiggins & Freer, Ltd.
        Marquis Aurbach Coffing
        Lewis Roca Rothgerber Christie LLP/Reno
        Lewis Roca Rothgerber Christie LLP/Phoenix
        Eighth District Court Clerk

---

[3]"This court will affirm a district court's order if the district court reached the correct result, even if for the wrong reason." *Saavedra-Sandoval v. Wal-Mart Stores, Inc.*, 126 Nev. 592, 599, 245 P.3d 1198, 1202 (2010).