136 Nev., Advance Opinion 21

IN THE SUPREME COURT OF THE STATE OF NEVADA

| | |
|---|---|
| IN THE MATTER OF THE WILLIAM J. RAGGIO FAMILY TRUST. | No. 76582 |

DALE CHECKET RAGGIO, INDIVIDUALLY AND AS TRUSTEE OF THE MARITAL DEDUCTION PORTION AND CREDIT SHARE OF THE WILLIAM J. RAGGIO FAMILY TRUST, Petitioner,

vs.

THE SECOND JUDICIAL DISTRICT COURT OF THE STATE OF NEVADA, IN AND FOR THE COUNTY OF WASHOE; AND THE HONORABLE DAVID A. HARDY, DISTRICT JUDGE, Respondents,

and

LESLIE RAGGIO RIGHETTI; AND TRACY RAGGIO CHEW, CO-TRUSTEES OF THE WILLIAM J. RAGGIO AND DOROTHY B. RAGGIO TRUST UNDER AGREEMENT DATED JANUARY 27, 1998, AS DECANTED AND VESTED REMAINDERMEN OF THE MARITAL DEDUCTION TRUST PORTION OF THE WILLIAM J. RAGGIO FAMILY TRUST, Real Parties in Interest.

**FILED**

APR 09 2020

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY_____
DEPUTY CLERK

Original petition for a writ of mandamus or, alternatively, prohibition, challenging a district court order compelling discovery.

*Petition granted.*

SUPREME COURT
OF
NEVADA

(O) 1947A

20-13457

Holland & Hart LLP and Frank Z. LaForge, Tamara Reid, and J. Robert Smith, Reno; Echeverria Law Office and John P. Echeverria, Reno, for Petitioner.

Maupin, Cox & LeGoy and G. Barton Mowry and Enrique R. Schaerer, Reno, for Real Party in Interest Leslie Raggio Righetti.

Michael A. Rosenauer, Ltd., and Michael A. Rosenauer, Reno, for Real Party in Interest Tracy Raggio Chew.

---

BEFORE THE COURT EN BANC.[1]

## OPINION

By the Court, HARDESTY, J.:

In this original writ petition, we must determine whether language in a trust instrument that allows a trustee to pay "as much of the principal of the Trust as the Trustee, in the Trustee's discretion, shall deem necessary for the proper support, care, and maintenance" of the beneficiary imposes an obligation on the trustee to consider the beneficiary's other assets. We hold that neither the trust instrument nor Nevada trust law requires the trustee to consider the beneficiary's other assets before making distributions from the trust. Because discovery relating to those other assets is irrelevant to the claim that the trustee breached her fiduciary duties, we grant petitioner Dale Checket Raggio's petition for writ relief.

---

[1]The Honorable Ron D. Parraguirre, Justice, voluntarily recused himself from participation in the decision in this matter.

SUPREME COURT
OF
NEVADA

(O) 1947A

2

## FACTS AND PROCEDURAL HISTORY

In 2007, William J. Raggio created the William J. Raggio Trust (Raggio Trust). It provided that, upon his death, the Raggio Trust would split into two subtrusts, the Marital Deduction Trust (Marital Trust) and the Credit Shelter Trust. Both subtrusts would be for the benefit of his second wife, petitioner Dale Checket Raggio, and detail support for Dale that allows the trustee to pay as much of the principal of the trust "as the Trustee, in the Trustee's discretion, shall deem necessary for the proper support, care, and maintenance" of Dale. The Raggio Trust named Dale both the trustee and life beneficiary of the subtrusts. William Raggio's two daughters from a previous marriage, respondents Leslie Righetti and Tracy Chew (collectively, Righetti), were named as remainder beneficiaries of the Marital Trust. Dale's grandchildren from her previous marriage are the remainder beneficiaries of the Credit Shelter Trust.

In 2015, after William Raggio had died, Righetti sued Dale for breach of trust and breach of fiduciary duties as trustee of the Marital Trust. Righetti alleged that Dale, as trustee, improperly distributed funds solely from the Marital Trust, thereby intentionally depleting Righetti's remainder interest in the Marital Trust. Righetti argued that Dale seeks to preserve her grandchildren's remainder interest in the Credit Shelter Trust and that she breached her fiduciary duties, particularly her duties of good faith, loyalty, and impartiality, by drawing solely from the Marital Trust. Righetti also alleged that Dale breached the Marital Trust by paying herself distributions in amounts that were more than necessary and proper for her support, care, and maintenance. Consequently, Righetti sought discovery of Dale's accounting and distributions of the Credit Shelter Trust to prove these claims.

SUPREME COURT
OF
NEVADA

(O) 1947A

Dale objected to the discovery requests because they were not reasonably calculated to lead to discovery of admissible evidence and Righetti was not a beneficiary of the Credit Shelter Trust. Dale also filed a motion for partial summary judgment. She argued that the probate commissioner's resolution of a prior petition precluded Righetti's arguments that Dale is obligated to proportionally spend down the assets of the Credit Shelter Trust and that Righetti is entitled to an accounting of the Credit Shelter Trust. Righetti opposed summary judgment and filed a motion to compel discovery, arguing that issue and claim preclusion did not apply. Righetti further argued that the terms of the Marital Trust, particularly the language "necessary for the proper support, care, and maintenance," fell within the exception of NRS 163.4175, which meant that Dale had an obligation to consider her other sources of income and resources before making support distributions to herself. In response, Dale argued that neither NRS 163.4175 nor the trust itself requires her to consider the Credit Shelter Trust, or any of her other assets, before making distributions from the Marital Trust as trustee.

The probate commissioner recommended denying Dale's motion for partial summary judgment because issue and claim preclusion did not apply, and the commissioner also recommended that Righetti's motion to compel discovery be held in abeyance, pending affirmance by the district court. At a hearing on the matter, Dale's counsel argued that while Dale owed Righetti "an accounting and a determination as to whether or not the spending of the marital trust is appropriate," Righetti was not entitled to an accounting of a trust to which she was not a beneficiary. The district court inquired into how an evaluation of Dale's "discretionary choice to support herself from one trust . . . [could] be measured without reference to

how she's also supported elsewhere." Dale's counsel argued that the trustee's discretion is measured by the intent of the settlor of the trust, and that because William Raggio "did not express an intent on that," there is no requirement under the trust or Nevada trust law to look at other sources of income. The district court questioned whether "one of [William Raggio's] implicit intents was to preserve some trust corpus . . . for the benefit of his two daughters and not exhaust the bypass trust in favor of preserving the credit shelter trust." Dale's counsel denied that there was any such intent evident in the trust instrument.

The district court focused on the meaning of "necessary for the proper support, care, and maintenance," asking hypothetically, "[i]f there's a mountain of gold behind her but we don't get to see that mountain, how can we understand that her invasion of principal is necessary? It's necessary only because of something." Dale's counsel argued that whether a distribution is "necessary" depends on Dale's standard of living when her husband was alive. Righetti's counsel, on the other hand, argued that "necessary" refers to Dale's other resources and assets and whether she needs the money.

Following the hearing, the district court denied Dale's partial summary judgment request, reasoning that

> [i]ntegral to the present claims is whether the trustee's discretionary principal distributions from the marital deduction trust were "necessary" and "proper." The vested remainder beneficiaries are entitled to examine the need and propriety of the trustee's decision to withdraw principal from the marital deduction trust by reference to other trust and non-trust resources available for the trustee's necessary and proper support. It appears possible this [c]ourt cannot determine what is necessary and proper without a complete understanding of the trustee's circumstances, to include standard of living and supportive resources beyond the marital deduction trust.

SUPREME COURT
OF
NEVADA

(O) 1947A

5

Shortly thereafter, the district court granted Righetti's renewed motion to compel discovery of the accounting and distributions of the Credit Shelter Trust, finding that the requested discovery was relevant to the subject matter and reasonably calculated to lead to the discovery of admissible evidence.

Dale filed the instant petition seeking a writ of prohibition or, alternatively, mandamus. Dale argues that the district court's discovery order was improper as a matter of law and asks us to vacate the district court's order compelling discovery.

## DISCUSSION

### We exercise our discretion to entertain Dale's petition for a writ of prohibition

Writ relief is an extraordinary remedy that is only available if a petitioner does not have "a plain, speedy and adequate remedy in the ordinary course of law." NRS 34.330; *see Club Vista Fin. Servs., LLC v. Eighth Judicial Dist. Court*, 128 Nev. 224, 228, 276 P.3d 246, 249 (2012). "[T]he issuance of a writ of mandamus or prohibition is purely discretionary with this court." *Wynn Resorts, Ltd. v. Eighth Judicial Dist. Court*, 133 Nev. 369, 373, 399 P.3d 334, 340-41 (2017) (alteration in original) (internal quotation marks omitted). A writ of prohibition is the proper remedy to prohibit the district court from compelling a party to disclose privileged or irrelevant discovery. *See id.* at 374, 399 P.3d at 341; *see also* NRS 34.320; *Toll v. Wilson*, 135 Nev., Adv. Op. 58, 453 P.3d 1215, 1217 n.1 (2019) ("A writ of prohibition is appropriate when the relief is to arrest the proceedings and prohibit some exercise of judicial function." (internal quotation marks omitted)).[2]

---

[2]Accordingly, we deny Dale's alternative request for a writ of mandamus.

Supreme Court
OF
Nevada

(O) 1947A

6

Although we generally decline to review a discovery order through a petition for extraordinary relief, we may exercise our discretion to do so if the challenged discovery order is likely to cause irreparable harm and a later appeal would not effectively remedy an improper disclosure of information. *Club Vista*, 128 Nev. at 228, 276 P.3d at 249. Here, the discovery order implicates Dale's privacy interests as the district court concluded it needed to review her "standard of living and supportive resources beyond the marital deduction trust" to determine if the distributions were necessary and proper. If the discovery permitted by the district court is legally irrelevant, a later appeal would not remedy the improper disclosure of the information. *See Schlatter v. Eighth Judicial Dist. Court*, 93 Nev. 189, 192, 561 P.2d 1342, 1344 (1977) (finding that it was an irreparable "invasion into a litigant's private affairs" to order discovery of information without regard to relevancy). We thus exercise our discretion to entertain this petition.

*The terms "necessary" and "proper" do not sufficiently trigger the exception of NRS 163.4175*

Dale argues that neither Nevada trust law nor the terms of the trust instrument itself impose an obligation on her to consider her other assets before making trust distributions. She argues that the order compelling discovery of the Credit Shelter Trust accounting and distributions is thus contrary to Nevada trust law and we should issue a writ of prohibition arresting said discovery. Righetti contends that the district court properly ordered discovery of the Credit Shelter Trust accounting and distributions because Dale's distributions from that trust are relevant to the claims of breach of trust and breach of fiduciary duties.

Parties may obtain discovery regarding any nonprivileged matter "which is relevant to the subject matter involved in the pending

action." NRCP 26(b)(1) (2008).[3] Generally, a district court's ruling on discovery matters is within its sound discretion and will not be disturbed absent a clear abuse of that discretion. *Club Vista*, 128 Nev. at 228, 276 P.3d at 249. But the interpretation of NRS 163.4175, which informs whether the accounting and distribution records of the Credit Shelter Trust are relevant to Righetti's breach of fiduciary duty claims, is a question of law that we review de novo. *See In re W.N. Connell & Marjorie T. Connell Living Tr.*, 133 Nev. 137, 139, 393 P.3d 1090, 1092 (2017) (examining trust interpretation de novo).

The narrow question before us is whether Dale, as trustee, has an obligation to consider other assets, including those in the Credit Shelter Trust, before making distributions to herself, as beneficiary, from the Marital Trust. We conclude she does not. NRS 163.4175 states, "[e]xcept as otherwise provided in the trust instrument, the trustee is not required to consider a beneficiary's assets or resources in determining whether to make a distribution of trust assets." Thus, Nevada trust law does not obligate a trustee to consider other assets or resources before making a distribution unless the trust instrument itself sets forth such a requirement. Accordingly, to determine whether Dale has such an obligation, we must look to the language of the trust instrument.

---

[3]The Nevada Rules of Civil Procedure were recently amended, and the amendments became effective on March 1, 2019. *See* ADKT 522 (*Order Amending the Rules of Civil Procedure, The Rules of Appellate Procedure, and the Nevada Electronic Filing and Conversion Rules*, Dec. 31, 2018). Because this case predates the effective date of the amendments to the civil procedure rules, we cite to the 2008 version of NRCP 26 in effect at the time of this action.

Section 5.1 of the Marital Trust states, in relevant part, that the trustee "shall pay to or apply for the benefit of [Dale] as much of the principal of the Trust as the Trustee, in the Trustee's discretion, shall deem necessary for the proper support, care, and maintenance" of Dale. Both Dale and Righetti argue that the term "necessary" is the focal point for our inquiry, and they offer two conflicting interpretations of it. Dale interprets "necessary" as referring only to the *amount* of disbursement needed for her "proper support, care, and maintenance," without regard to her other assets. Righetti, on the other hand, interprets "necessary" as creating a threshold of *financial need*. Under this interpretation, Dale, as trustee, cannot distribute trust funds unless she can first show that without the trust distributions, she could not provide for her own "support, care, and maintenance." Righetti argues that the relevant discovery inquiry in determining whether a distribution is "necessary" to Dale is to determine what other financial means she has for her support, care, and maintenance.

The district court appears to have adopted Righetti's interpretation of "necessary," in that it creates a threshold of *financial need*. The district court determined that it "cannot determine what is necessary and proper without a complete understanding of the trustee's circumstances, to include standard of living and supportive resources beyond the marital deduction trust." We conclude that this determination was clearly erroneous for several reasons.

First, evident from the instrument itself, a fair and reasonable interpretation of the text as a whole shows William Raggio did not restrict Dale's discretion and require that she consider her other assets before making distributions. We "construe[ ] trusts in a manner effecting the apparent intent of the settlor." *Hannam v. Brown*, 114 Nev. 350, 356, 956

SUPREME COURT
OF
NEVADA

(O) 1947A

P.2d 794, 798 (1998); *see* Jonathan M. Purver, Annotation, *Propriety of Considering Beneficiary's Other Means Under Trust Provision Authorizing Invasion of Principal for Beneficiary's Support*, 41 A.L.R.3d 255, 262-63 (1972). In determining the settlor's intent, "we employ contract principles, including determining the intentions of the settlor by considering [the trust] as a whole, and favoring the most fair and reasonable interpretation of the trust's language." *In re W.N. Connell & Marjorie T. Connell Living Tr.*, 134 Nev. 613, 616, 426 P.3d 599, 602 (2018) (alteration in original) (internal quotation marks and citation omitted). Article 8.1(a), which details Dale's "powers" as trustee, states "[i]n the event any of such powers or discretion" in the agreement are inconsistent with NRS 163.265 to NRS 163.410, "the *most liberal [interpretation] shall control* to give the *greatest latitude and discretion* to the Trustee." (Emphases added.) Section 5.1, which details Dale's authority for the administration and distribution from the Marital Trust, provides that Dale may distribute "as much of the principal of the Trust as [Dale], in [her] *discretion*, shall deem necessary for the proper support, care, and maintenance" of Dale. (Emphasis added.) It is evident from this language that William Raggio intended Dale to have discretion in making distributions and did not invoke NRS 163.4175's exception by requiring Dale first consider her other income or resources. *See President, Dirs. & Co. of Farmers Bank of Del. v. Del. Tr. Co.*, 95 A.2d 45, 47 (Del. Ch. 1953) (determining that settlor's knowledge of beneficiary's assets demonstrated that settlor did not intend to employ language of condition when creating a support provision in a will).

Moreover, the district court's reading is contrary to the other provisions of the trust instrument itself. In contrast to Section 5.1's discretionary language, Section 6.4, which covers the administration and

SUPREME COURT
OF
NEVADA

(O) 1947A

distribution to the living issue of a grandson, provides that Dale shall pay such amounts that "[Dale], in [her] discretion, shall deem necessary for their proper support . . . *after taking into consideration . . . any other income or resources* of such issue known to" Dale. This language exhibits that William Raggio understood how to restrict Dale's authority as trustee in the manner Righetti asks us to read into Section 5.1, but he deliberately chose not to limit Dale's discretion in that regard with respect to the Marital Trust. Accordingly, as we consider the trust as a whole to determine the most fair and reasonable interpretation of Section 5.1, we determine the trust instrument does not invoke NRS 163.4175's exception, and therefore, Dale is not required to consider her assets or resources to make distributions from the trust assets.[4]

We thus conclude that the district court's interpretation is contrary to NRS 163.4175, which requires trustees to consider other assets only if the trust instrument itself invokes the exception. The district court should have begun its analysis from the position that Dale was not obligated to consider her other assets or resources before making a distribution unless the exception was invoked. Instead, the district court disregarded NRS 163.4175 and began evaluating whether one of William Raggio's "implicit intents was to preserve some trust corpus . . . for the benefit of his two daughters and not exhaust the bypass trust in favor of preserving the credit

---

[4]Righetti relies heavily in her briefs and argument before us on Restatement (Third) of Trusts § 50 cmt. e (Am. Law Inst. 2003) (detailing that where the trust instrument does not address the question, there is a presumption that a trustee must take a beneficiary's other resources into account in determining whether and in what amounts distributions are to be made). We conclude that Righetti's argument is without merit. Based on the plain language of the statute, it is apparent that the Legislature rejected this presumption when it enacted NRS 163.4175.

SUPREME COURT
OF
NEVADA

(O) 1947A

shelter trust." NRS 163.4175 clearly provides that, if a settlor wants trustees to consider a beneficiary's other assets, the settlor must so state in the trust instrument. We cannot infer an exception to NRS 163.4175 based solely on the terms "necessary" and "proper" in the trust instrument, as those terms appear frequently in trusts but their meanings depend on the circumstances and text of the instruments. *See, e.g., Del. Tr. Co.*, 95 A.2d at 47 (holding that "upon a full reading of the will in the light of the surrounding circumstances . . . [the term "necessary" was] not language of condition[,] but [rather, was] language fixing the standard by which the trustee is to exercise its discretion in determining the amount to be spent"). Rather, it must be clear from the trust as a whole that the settlor's intent is to require the trustee to consider other assets. William Raggio did not express that intent.

Therefore, we conclude the district court erred as a matter of law in compelling discovery of the accounting and distributions of the Credit Shelter Trust. Neither NRS 163.4175 nor the Raggio Trust requires Dale to consider her other assets in making distributions from the Marital Trust, and thus, information about those assets is irrelevant.[5]

## CONCLUSION

Because the district court erred when it compelled the production of irrelevant information, we grant Dale's petition for writ relief and direct the clerk of this court to issue a writ of prohibition directing the

[5]Because we conclude that neither Nevada law nor the trust instrument requires a consideration of Dale's other assets, Righetti's argument over the proportionate spend-down between the two trusts is also without merit. Dale, as a trustee, is not required to consider her other assets, which necessarily includes the assets of the Credit Shelter Trust and the distributions made from it.

district court to vacate its order compelling discovery of the accounting and distributions of the Credit Shelter Trust.

_____ , J.
Hardesty

We concur:

_____ , J.
Gibbons

_____ , J.
Stiglich

_____ , J.
Silver

Supreme Court
of
Nevada

(O) 1947A

CADISH, J., with whom PICKERING, C.J., agrees, dissenting:

I do not believe the instant writ petition meets the standard to warrant our discretionary review, and I therefore dissent. Dale filed the instant petition for writ of prohibition or mandamus to challenge a discovery order entered by the district court. The majority correctly notes that we generally decline to review discovery orders through such a petition, but that we may do so "if the challenged discovery order is likely to cause irreparable harm *and* a later appeal would not effectively remedy an improper disclosure of information." Majority op. at 7 (emphasis added) (citing *Club Vista Fin. Servs., LLC v. Eighth Judicial Dist. Court*, 128 Nev. 224, 228, 276 P.3d 246, 249 (2012)). The majority then states, in conclusory fashion, that a later appeal would not remedy the disclosure here if the discovery were later determined to be inappropriate and chooses to exercise its discretion to entertain the petition. The majority, however, makes no determination that the challenged discovery order is likely to cause irreparable harm, as required by the very standard it states. Indeed, Dale has made no showing of a likelihood of irreparable injury, having acknowledged that the requested discovery would not result in the disclosure of any privileged information, and failed to demonstrate any particular harm if the records were to be disclosed.

Moreover, the majority identifies the key question before it as "whether Dale, as trustee, has an obligation to consider other assets, including those in the Credit Shelter Trust, before making distributions to herself, as beneficiary, from the Marital Trust." Majority op. at 8. However, the district court in this case has not yet made a final ruling on this issue,

and thus it is not proper for this court's consideration in the context of this interlocutory writ proceeding.[1] *See Smith v. Eighth Judicial Dist. Court*, 107 Nev. 674, 677, 818 P.2d 849, 851 (1991) (setting forth scope of prohibition and mandamus and observing that both are "purely discretionary" with this court). Issuing an opinion on this issue at this point is contrary to our general practice of ruling on issues only after the district court has had the opportunity to fully analyze and reach its own conclusion on them, particularly since the majority's conclusion rests on its factual determination of the trustor's intent. *Archon Corp. v. Eighth Judicial Dist. Court*, 133 Nev. 816, 823, 407 P.3d 702, 708 (2017) ("To efficiently and thoughtfully resolve such an important issue of law demands a well-developed district court record, including legal positions fully argued by the parties and a merits-based decision by the district court judge."); *see Round Hill Gen. Improvement Dist. v. Newman*, 97 Nev. 601, 604, 637 P.2d 534, 536 (1981) (explaining that "an appellate court is not an appropriate forum in which to resolve disputed questions of fact").

 For these reasons, I would decline to consider writ relief in the instant case, and I therefore respectfully dissent.

_____, J.
Cadish

I concur:

_____, C.J.
Pickering

---

[1]The district court denied Dale's motion for partial summary judgment, which left the issue to be finally resolved at the time of trial. The instant petition challenges only the discovery order entered by the district court, not the order denying the partial summary judgment motion.